2025 IL App (1st) 240445

First District
Third Division
November 5, 2025

No. 1-24-0445

|   |   |   |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) )  | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| | ) | No. 06 CR 01766 (03) |
| v. | ) ) | |
| | ) | The Honorable |
| JOYCE McGEE, | ) ) | Terry Gallagher, Judge Presiding. |
| Defendant-Appellant. | ) ) | |

JUSTICE REYES delivered the judgment of the court, with opinion.
Justices Lampkin and Rochford concurred in the judgment and opinion.

## OPINION

¶ 1    After a bench trial, defendant Joyce McGee was convicted of first degree murder (720 ILCS 5/9-1 (West 2004)) and was sentenced to 40 years in the Illinois Department of Corrections. Defendant's conviction and sentence were affirmed on appeal (*People v. McGee*, 2011 IL App (1st) 100198-U), and a subsequent postconviction petition was summarily dismissed, a decision which was also affirmed on appeal (*People v. McGee*, 2014 IL App (1st) 131964-U). Defendant then filed a motion for leave to file a successive postconviction petition, contending, in relevant part, that her 40-year sentence violated the federal and state constitutions, where she was 18 years old at the time of the offense and the trial court did not consider her youth in imposing its sentence. Defendant was given leave to file her successive petition, but the circuit court ultimately granted the State's motion to dismiss the successive petition, as amended by postconviction counsel, at the second stage. Defendant now appeals,

contending that her postconviction counsel was ineffective in failing to properly support her sentencing claim in her successive petition. For the reasons that follow, we affirm.

¶ 2                                    BACKGROUND

¶ 3       As noted, the instant appeal represents the third time this case has been before us, as we have previously affirmed defendant's conviction and sentence on direct appeal (*McGee*, 2011 IL App (1st) 100198-U), as well as the dismissal of her postconviction petition (*McGee*, 2014 IL App (1st) 131964-U). Accordingly, we take the facts as set forth in our prior decisions where applicable.

¶ 4                                       *Trial*

¶ 5       Defendant, who was 18 years old at the time, was arrested on December 27, 2005, for the first degree murder of Abimbola Ogunniyi, a cab driver working for the Gant South Side Livery service. Defendant and codefendants Elliot Peterson and Jamille Brown were tried for the murder, with Peterson and Brown electing jury trials and defendant a bench trial.

¶ 6       Police learned defendant's phone was used to call Gant South Side Livery service to request a cab. During an interrogation, defendant initially stated she did not know who made two calls from her phone that day. After a detective requested she check her phone to see who made calls around 4 p.m., defendant stated that the only call she made was at 10:30 a.m. to her sister. Eventually, she denied making any calls. She also claimed that friends of codefendant Peterson named Pee Wee and Carl used her phone to call a cab, then robbed and murdered the cab driver.

¶ 7       Defendant later admitted she lied to the police about the phone use, Carl, and Pee Wee. After admitting she was untruthful, defendant told the police she and the codefendants spent the night at Peterson's apartment before the shooting. Peterson called the Gant South Side

Livery cab company using defendant's cellphone. Although she gave numerous conflicting accounts throughout the interrogation, defendant stated she and the codefendants planned to evade paying for the cab fare, then steal the cab to use while robbing an armored vehicle. When the cab arrived, defendant and the codefendants gave defendant's address to the driver as the destination. Peterson redirected the driver to an alley near 87th Street and Pulaski Road.

¶ 8        There, defendant and Brown jumped out of the cab and, from outside, watched Peterson point a firearm at the driver inside the cab. The driver and Peterson exited the cab, and Peterson told the driver to remove his clothing. The two women ran to the front of the cab, while Peterson and the driver walked to the rear. Defendant then heard the firearm discharge. She jumped into the front passenger side of the cab, and Brown sat in the driver's seat. Peterson entered the cab and sat in the back seat. Brown drove off at the behest of Peterson, leaving the wounded cab driver in the alley. Ogunniyi suffered a gunshot wound to his left thigh and died from the injury. He was found face down in the alley by a group of friends who called 911 and waited for the police to arrive.

¶ 9        When the police arrived, Ogunniyi did not have a pulse and was lying in a pool of blood. Police found a denim shirt and baseball cap lying in blood at the scene. Ogunniyi's son later identified these items as belonging to his father. Meanwhile, Brown parked the cab near Christ Hospital, where Peterson removed the driver's wallet from the glove compartment. The cab was registered to Ogunniyi and found abandoned in the area of 94th Street and Kenton Avenue in Oak Lawn, approximately a mile from the crime scene.

¶ 10        Peterson, Brown, and defendant went to Walgreens and purchased a candy bar to make change for the bus fare; defendant's interrogation responses varied as to whether she knew the driver had been shot at this point in time that night. Defendant helped Peterson dispose of

Ogunniyi's clothing and other belongings. Her fingerprint was found on Ogunniyi's broken cellphone; she never called the police. At the police station, defendant was interrogated by two officers over the course of several days. The interrogation was videotaped, amounting to seven hours of tape.

¶ 11    Defendant's counsel filed, and later withdrew, a motion to quash arrest and suppress statements contained in the videotapes. At trial, the trial court noted in its findings of fact that defendant's statements made during the interrogation tapes were voluntary and that it would have denied the motion to suppress had it not been withdrawn. The trial court found defendant guilty of felony murder based on accountability.

¶ 12    In sentencing defendant, the trial court indicated that it had considered evidence in both aggravation and mitigation. As relevant to the issue of mitigation, defendant's presentence investigation report (PSI) indicated that defendant was a high school graduate with no prior criminal record and no record of gang involvement. She reported being raised by both parents and had a good relationship with them, further reporting that "while growing up, she did not suffer from any abuse, neglect, Department of Children and Family Services involvement or runaway situations." Defendant indicated that she earned A's and B's in school and participated in extracurricular activities, including involvement with the Reserve Officers' Training Corps (ROTC), and was scheduled to begin attending community college prior to her incarceration. She reported no psychological issues and no drug use; while she reported consuming alcohol regularly, she denied any issues with alcohol. Defendant also provided a letter of support from a guidance counselor at her high school and witness testimony concerning her character and made a statement in allocution in which she expressed remorse for her actions. In support of a minimal sentence, defense counsel focused on defendant's lack

4

of involvement with any prior criminal activity and suggested that she had no intention of being involved in such activity on the date of the victim's death. Counsel contended:

> "Joyce McGee, as she stands before you, and if you look at your pre-sentence report, every page of this pre-sentence report it deals with, yes, she had a good family upbringing, she graduated from high school, she went and worked all during her student[ ] years, she worked, she was on her way to go to college. She has no adjudications for any kind of criminal history as an adult or a juvenile. She has brothers and sisters, she has gone to church, voluntarily went to the police station, she has always been in school, no history of delinquency. She has always worked, has had numerous jobs. And I don't believe that any sentence should be predicated upon her as being a dangerous person or a threat to the community."

Accordingly, counsel requested that the trial court "consider her age, a potential she has for quote/unquote, rehabilitation, her apologies for her conduct to the family in this case, and with condolences to the family in this case," and sentence defendant to the minimum 20-year term for first degree murder or, if the trial court applied the 15-year sentencing enhancement, to the minimum 35-year term.

¶ 13    Defendant was ultimately sentenced to 25 years' incarceration for first degree murder, with a 15-year sentencing enhancement for crimes committed with firearms, for a total of 40 years' incarceration.

¶ 14                    *Direct Appeal and Initial Postconviction Petition*

¶ 15    Defendant appealed her conviction and sentence, challenging her conviction based on the use of her videotaped statements and challenging her sentence based on her claim that the sentence was excessive in light of "her age, lack of criminal history, education, employment,

5

remorse, and degree of participation in the crime." *McGee*, 2011 IL App (1st) 100198-U, ¶ 18. This court affirmed the trial court's judgment in its entirety, finding that her trial counsel was not ineffective in acquiescing to the use of the videotapes and further finding that her sentence was appropriate where the record demonstrated that the trial court heard and considered the evidence in aggravation and mitigation. See *id.* ¶ 21.

¶ 16     In 2013, defendant filed a postconviction petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)), alleging ineffective assistance of trial counsel. The circuit court summarily dismissed the petition, and defendant appealed. On appeal, the state appellate defender filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), concluding that an appeal in the case would be frivolous. We permitted counsel to withdraw and affirmed the circuit court's dismissal of the postconviction petition. See *McGee*, 2014 IL App (1st) 131964-U, ¶ 4.

¶ 17                    *Successive Postconviction Petition*

¶ 18     In 2018, defendant filed a *pro se* motion for leave to file a successive postconviction petition, pursuant to the Act. Defendant claimed that her sentence violated the eighth amendment of the federal Constitution, as well as the proportionate penalties clause of the Illinois Constitution, and she was therefore entitled to a new sentencing hearing. Defendant contended that "the issuance of a new case that changed the law applicable" to a petitioner's case permitted the filing of a successive postconviction petition. Defendant pointed to the "new substantive rule" proclaimed in *Miller v. Alabama*, 567 U.S. 460 (2012), which prohibited mandatory life sentences for individuals under 18, as well as a new sentencing scheme for minors which was enacted by the Illinois legislature in response to *Miller*. Defendant claimed that, based on this authority, several Illinois courts had granted new sentencing hearings to

defendants based on the proportionate penalties clause, even where the defendants' ages ranged from 18 to 20 years. Defendant further claimed that *Miller*'s new substantive rule established cause, as the rule was not available at the time of filing her previous petition, and she was prejudiced since the Illinois Supreme Court had indicated that the *Miller* rule applied retroactively.

¶ 19    In addition to the claim concerning her sentencing, defendant raised four issues which are not the subject of the instant appeal. Specifically, defendant argued that (1) postconviction counsel was ineffective for failing to raise any constitutional claims in the initial postconviction petition; (2) new case law established that the State failed to prove the required *mens rea* for first degree murder under a theory of accountability; (3) trial, appellate, and postconviction counsel were ineffective for failing to argue that defendant's statements to police were involuntary and inadmissible; and (4) appellate counsel was ineffective and violated defendant's due process rights by failing to inform her of postconviction counsel's inexperience and by telling postconviction counsel that the initial postconviction " 'looked good' " despite its lack of any constitutional claims.

¶ 20    Defendant also argued that her postconviction counsel was ineffective and failed to provide a reasonable level of assistance as required by statute. Defendant claimed that, despite counsel's representations to the contrary, her retained counsel lacked any experience in postconviction matters. Consequently, counsel failed to allege any constitutional claims in the initial postconviction petition, omitting any claims of ineffective assistance of trial counsel for (1) failure to call witnesses, (2) failure to investigate, (3) erroneous advice during plea negotiations, and (4) failure to properly communicate with defendant. Defendant contended that she had established cause for her failure to raise her ineffective assistance of trial counsel

claim in her initial postconviction petition based on postconviction counsel's ineffectiveness and claimed that, had the petition been properly presented, it would have been advanced for further proceedings with the court.

¶ 21    Defendant was given leave to file her petition, and she ultimately retained counsel for the second-stage proceedings. Through counsel, defendant filed an amended petition in September 2020 which raised only the issue of her allegedly unconstitutional sentence. The amended petition noted that the protections of *Miller* had recently been extended to those over the age of 18, citing *People v. House*, 2019 IL App (1st) 110580-B, *rev'd in part and vacated in part*, 2021 IL 125124, and *People v. Ruiz*, 2020 IL App (1st) 163145, *abrogated by People v. Hilliard*, 2023 IL 128186. The amended petition claimed that "[t]he petitioner contends and the First District Appellate Court now agrees that the emerging scientific consensus on the ongoing neurological development of adults" (internal quotation marks omitted) suggests that sentencing individuals under the age of 21 to mandatory life imprisonment violates the eighth amendment, citing *House*, 2019 IL App (1st) 110580-B, *rev'd in part and vacated in part*, 2021 IL 125124; *Ruiz*, 2020 IL App (1st) 163145, *abrogated by Hilliard*, 2023 IL 128186; and *People v. Johnson*, 2020 IL App (1st) 171362, *abrogated by Hilliard*, 2023 IL 128186. The petition relied on a lengthy quote from the *House* court's discussion of the scholarly research concerning juvenile brain development in support of her contention that young offenders were more similar to adolescents than to mature adults. In addition, the petition contended that the recent case law suggested that "juvenile offenders, no matter how serious the offense, and absent a specific finding that the juvenile offender is totally irredeemable and unable to be rehabilitated, must be given some opportunity to present to the parole board some evidence of

rehabilitation at some time during their sentence." As such, counsel attached documentation concerning defendant's rehabilitative potential to the petition.

¶ 22    The State filed a motion to dismiss the petition on October 13, 2020. The State contended that defendant had failed to show prejudice with respect to either her eighth amendment claim or her proportionate penalties claim, as *Miller* did not apply to a petitioner over 18 years old who did not receive a life sentence and her sentence was not manifestly disproportionate. The State also pointed to the lack of facts set forth in the petition and claimed that "Petitioner fails to attach any research or reports regarding any evolving science and how it applied to Petitioner's circumstances or individual characteristics." The State further contended that, even if defendant had demonstrated prejudice, she nevertheless failed to make a substantial showing of any constitutional violation.

¶ 23    In response, defendant claimed that Illinois had extended the protections of *Miller* to individuals over 18 and that she "has demonstrated and the First District Appellate Court now agrees" that sentencing individuals under the age of 21 to mandatory life imprisonment violated the eighth amendment. Defendant maintained that the trial court never considered her youth in sentencing her, and claimed that her sentence was disproportionate. Defendant indicated that, in support of her position, she "submit[ted] documents that indicate that the petitioner is remorseful and exhibits the incentive and courage to make something of her life despite the daunting cross of a *de facto* life sentence and manifests the reality that she is not irreparably broken."

¶ 24    In its reply, the State indicated that the Illinois Supreme Court had unequivocally held that defendants over the age of 18 were not subject to *Miller* for purposes of an eighth-amendment challenge. With respect to the proportionate penalties claim, the State argued that, based on the

9

facts of the case, defendant's sentence was not disproportionate and the record demonstrated that the trial court was presented with evidence of her youth at the time of sentencing.

¶ 25      On August 26, 2021, defendant filed an "addend[um]" to her response to the State's motion to dismiss, attaching a report from a psychological evaluation performed by Mitchell Hicks, a licensed clinical psychologist, in support of her claim for resentencing pursuant to *Miller*. Hicks indicated that he had conducted the evaluation with two goals: "to attempt to reconstruct her psychological status at the time of the offense and to document her current functioning as related to the factors outlined in *Miller*." The evaluation included a paragraph in which Hicks "attempt[ed] to reconstruct her social and emotional functioning at the time of the offense" based on defendant's self-reporting. Hicks noted that "it seems that her early childhood was wrought with serious adverse experiences," including her parents' issues with addiction and unstable housing, which led to defendant's developing a way of relating to herself and others which was "characterized by caring for others at her own expense." According to the evaluation, "[t]his pattern continued and based on [defendant's] report was why she was with her codefendants on the day of the instant offense." In the evaluation, Hicks further indicated that "a history of trauma could explain why she reported essentially freezing when the situation [became] chaotic and overwhelming." The evaluation additionally noted that "there is some reason to question her level of maturity at the time of the offense," pointing to her failure to appreciate that "when she was being questioned about Mr. Ogunniyi's death that she was in fact in serious trouble. She was more focused on protecting her friend and her friend's boyfriend and did not want to 'tell on them.' "

¶ 26    In response, the State filed a "supplemental motion to dismiss," claiming that the psychological evaluation failed to provide any relevant insight into defendant's proportionate penalties clause challenge.

¶ 27    The parties came before the circuit court for a hearing on the State's motion to dismiss on February 18, 2022. During the hearing, the parties, in large part, focused on whether defendant's youth had been properly considered at her sentencing and on whether defendant had established that she was entitled to the protections set forth in *Miller*. The circuit court took the parties' arguments under advisement, and on August 8, 2022, the circuit court denied the motion to dismiss and advanced the matter to third-stage proceedings. The matter was continued several times by agreement of the parties, as the parties anticipated decisions from the Illinois Supreme Court relating to the issues raised in the petition. The Illinois Supreme Court eventually issued decisions in those cases: both *People v. Moore*, 2023 IL 126461, and *People v. Wilson*, 2023 IL 127666, were decided on May 18, 2023.

¶ 28    On June 15, 2023, the State filed a motion to reconsider the circuit court's second-stage ruling in light of the new Illinois Supreme Court decisions, contending that the new case law "ha[s] changed [the] previous rationale used by appellate courts when analyzing not only the cause/prejudice test but also whether a prior sentencing hearing was *Miller* compliant." As such, the State claimed that the new decisions demonstrated that defendant had failed to satisfy the cause-and-prejudice test for successive postconviction petitions. Based on *Moore*, the State claimed that defendant had failed to establish cause, as *Moore* made clear that *Miller* did not provide cause with respect to a proportionate penalties claim brought by a young adult subject to a discretionary sentence. In addition, the State claimed that defendant had failed to establish prejudice, as *Wilson* instructed that the trial court was presumed to have considered a

defendant's youth in imposing a discretionary sentence unless the trial court expressly refused to consider youth as a matter of law.

¶ 29    In response, defendant argued that the recent cases were not retroactive and that the law in effect at the time she filed her successive postconviction petition should govern. Under that standard, defendant claimed that the State's motion to reconsider should be denied and that she should be permitted a third-stage evidentiary hearing at which she could make an appropriate record as to her claims.

¶ 30    The parties came before the circuit court for a hearing on the State's motion to reconsider on January 29, 2024, and on February 16, 2024, the circuit court granted the motion and dismissed[1] defendant's successive postconviction petition. This appeal follows.

¶ 31                                    ANALYSIS

¶ 32    On appeal, defendant contends that postconviction counsel provided unreasonable assistance in failing to provide the proper evidentiary support for her proportionate penalties clause claim.[2] The Act provides a framework for incarcerated individuals to collaterally attack their convictions by establishing the substantial denial of a constitutional right during trial or sentencing. 725 ILCS 5/122-1(a)(1) (West 2018). The statute, however, generally contemplates the filing of only one postconviction petition. *People v. Clark*, 2023 IL 127273, ¶ 39; 725 ILCS 5/122-1(f) (West 2018). As the filing of successive postconviction petitions is "highly disfavored," a defendant may file a successive petition only under certain

---

[1]We observe that, in its motion to reconsider, the State requested that the circuit court deny defendant leave to file her successive postconviction petition or, in the alternative, to dismiss the petition. While the handwritten notation on the half-sheet contained in the record on appeal indicates that the petition was "denied," the State argued for the dismissal of the petition at the hearing on its motion, and the circuit court's oral ruling indicates that it was "dismiss[ing]" the petition.

[2]Defendant does not challenge counsel's assistance concerning the eighth amendment claim, nor does she contend that the circuit court erred in dismissing her successive petition.

circumstances and must obtain leave of court to do so. (Internal quotation marks omitted.) *Clark*, 2023 IL 127273, ¶ 39.

¶ 33        Our supreme court has identified two bases upon which the bar against successive proceedings will be relaxed, including, as relevant to the instant appeal, where a defendant can establish "cause and prejudice" for failing to raise the claim in an earlier petition. See *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002); see also 725 ILCS 5/122-1(f) (West 2018) (codifying cause-and-prejudice test). In determining whether to grant leave to file a successive postconviction petition, the circuit court makes a cause-and-prejudice determination by conducting a preliminary screening of the defendant's motion to assess whether the motion adequately alleges facts making a *prima facie* showing of cause and prejudice. *Clark*, 2023 IL 127273, ¶ 47. If the circuit court grants the defendant leave to file, the petition is docketed for second-stage proceedings. See *People v. Sanders*, 2016 IL 118123, ¶ 28; see also *People v. McCoy*, 2025 IL App (1st) 232395-U, ¶ 15.

¶ 34        At the second stage, the court may appoint counsel to represent an indigent defendant and, if necessary, to file an amended petition; at this stage, the State must either move to dismiss or answer the petition. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996); 725 ILCS 5/122-4, 122-5 (West 2018). Only if the petition and accompanying documentation make a substantial showing of a constitutional violation will the defendant proceed to the third stage, an evidentiary hearing on the merits. *People v. Silagy*, 116 Ill. 2d 357, 365 (1987); 725 ILCS 5/122-6 (West 2018).

¶ 35        There is no constitutional right to assistance of counsel during postconviction proceedings. *People v. Cotto*, 2016 IL 119006, ¶ 29. As such, our supreme court has explained that the right to assistance of counsel in postconviction proceedings is " 'a matter of legislative grace' " and

a defendant is guaranteed only the level of assistance provided by the Act. *Id.* (quoting *People v. Hardin*, 217 Ill. 2d 289, 299 (2005)). Our supreme court has further interpreted the Act as providing a postconviction petitioner with "reasonable" assistance. See *Hardin*, 217 Ill. 2d at 299; see also *Cotto*, 2016 IL 119006, ¶ 30; *People v. Owens*, 139 Ill. 2d 351, 358-59 (1990). This reasonable-assistance requirement applies to both appointed and retained counsel (*Cotto*, 2016 IL 119006, ¶ 42) and to both initial and successive postconviction petitions (see, *e.g.*, *id.* (initial petition); *People v. Perry*, 2017 IL App (1st) 150587, ¶ 26 (successive petition)). The question of whether postconviction counsel provided reasonable assistance is reviewed *de novo*. *People v. Williams*, 2025 IL 129718, ¶ 41.

¶ 36    When an initially *pro se* defendant is represented by counsel for second-stage proceedings, counsel is required to perform certain duties on behalf of the defendant pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), which may be evidenced by the filing of a certificate. See *People v. Richmond*, 188 Ill. 2d 376, 380-81 (1999) (the requirements of Rule 651(c) apply whether the attorney is appointed by the court or retained by the defendant). Specifically, Rule 651(c) requires counsel to (1) consult with the defendant to ascertain her claims of deprivation of constitutional rights, (2) examine the record of the trial court proceedings, and (3) make any amendments to the *pro se* petition necessary for an adequate presentation of the defendant's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 37    The filing of a Rule 651(c) certificate creates a rebuttable presumption that counsel has provided reasonable assistance. *People v. Custer*, 2019 IL 123339, ¶ 32. Rule 651(c), however, is " 'merely a vehicle for ensuring a reasonable level of assistance' " and is not the only way to demonstrate reasonable assistance in the postconviction proceedings. *Cotto*, 2016 IL 119006, ¶ 41 (quoting *People v. Anguiano*, 2013 IL App (1st) 113458, ¶ 37). As such, a failure

to file a Rule 651(c) certificate is harmless "if the record demonstrates that counsel adequately fulfilled the required duties." *People v. Lander*, 215 Ill. 2d 577, 584 (2005).

¶ 38   In this case, there is no dispute that defendant's counsel did not file a Rule 651(c) certificate. Thus, we must determine whether the record nevertheless demonstrates that counsel adequately fulfilled his required duties. Defendant's claim of unreasonable assistance is based on her contention that counsel failed to provide the evidentiary support necessary to adequately present her proportionate penalties clause claim. Defendant contends that the only way for a young adult such as herself to properly raise an as-applied proportionate penalties clause challenge is to provide evidence establishing how the evolving science of juvenile brain development specifically applies to the circumstances of her case. Instead of providing such evidence, defendant claims that counsel merely focused on evidence of her rehabilitative potential. We do not find defendant's argument persuasive.

¶ 39   First, we observe that defendant repeatedly analogizes the posture of her case to cases that are factually dissimilar, muddying the applicable analysis. To be clear: defendant was over the age of 18 when she was sentenced to a discretionary 40-year sentence, which she challenged via a successive postconviction petition. Thus, to the extent that defendant cites cases (1) involving juveniles, (2) involving mandatory life sentences, or (3) involving initial postconviction petitions, such cases are unhelpful to our analysis. Specifically, where defendant relies on *People v. Thompson*, 2015 IL 118151, or *People v. Harris*, 2018 IL 121932, our supreme court has made clear that those cases are wholly irrelevant to defendant's situation. See *Clark*, 2023 IL 127273, ¶ 88 (*Thompson* and *Harris* "addressed the possibility of a defendant raising a *Miller*-based challenge with respect to *mandatory* life sentences in *initial* postconviction petitions" (emphases in original)). Indeed, in *Hilliard*, our supreme court

15

expressly rejected the defendant's reliance on both cases, even in the context of a first-stage dismissal of an initial postconviction petition, where the defendant did not receive a mandatory life sentence. *Hilliard*, 2023 IL 128186, ¶ 28. As our supreme court has observed, such cases "do not provide support for [her] proportionate penalties claim, beyond the general principle that as-applied constitutional claims cannot ultimately succeed absent a sufficiently developed evidentiary record." *Id.* ¶ 27.

¶ 40    In addition, we cannot find that counsel failed to adequately support defendant's claim. We observe that counsel supplemented the response to the State's motion to dismiss with a psychological evaluation that was expressly intended, in part, "to attempt to reconstruct her psychological status at the time of the offense." The evaluation accordingly contained a discussion, albeit relatively brief, as to the effect of defendant's upbringing on her personality and her maturity. While defendant suggests that the evaluation did not provide sufficient analysis of her psychological functioning, the fact remains that counsel did retain an expert to conduct an evaluation in support of the claims raised in her petition.[3] The petition also included citation to several cases discussing juvenile development, providing further support for the claims raised therein. See *People v. Chairs*, 2021 IL App (5th) 180429-U, ¶ 39 (finding that postconviction counsel was not ineffective in citing the appellate decision in *House* in support of the petitioner's claim, as "the *House* decision included a thorough review of the scientific research regarding the brain development of emerging adults, and counsel could have reasonably decided that the citation to that decision was sufficient to present the scientific evidence to support the defendant's claim").

---

[3]We also observe that, in her PSI and at sentencing, defendant's upbringing and behavior prior to her incarceration were portrayed positively, suggesting that additional evidence as to her immaturity simply may not exist.

¶ 41        Importantly, the *circuit court* found that defendant's petition was sufficiently developed—it initially denied the State's motion to dismiss and set the matter for a third-stage evidentiary hearing. The reason that the circuit court ultimately granted the State's motion to reconsider was newly decided case law from the Illinois Supreme Court, not the inadequacy of the factual record. We cannot find that counsel failed to provide reasonable assistance where he presented a petition which the circuit court found contained sufficient factual support to advance to third-stage proceedings. See *Williams*, 2025 IL 129718, ¶ 46 ("[W]e note that the petition survived the first stage and was advanced to the second stage. Clearly, the trial court did not find the petition deficient or frivolous.").

¶ 42        We must also bear in mind that, at the time of the proceedings at issue, the state of the law concerning youth sentencing was changing rapidly. While defendant is correct that *Thompson* and *Harris* suggested the need for a developed factual record, what that record needed to consist of and how that record should be developed were subject to varying interpretations. Thus, for instance, in the petition prepared by counsel in September 2020, counsel relied on *House*, 2019 IL App (1st) 110580-B, ¶ 72, *rev'd in part and vacated in part*, 2021 IL 125124, in which the appellate court reviewed the evidence presented at trial, case law, and articles in finding that the defendant was entitled to a new sentencing hearing at which "both defendant and the State will have the opportunity to fully explore defendant's argument and the evolving science on juvenile brain development." Counsel also cited *Ruiz*, 2020 IL App (1st) 163145, ¶ 56, *abrogated by Hilliard*, 2023 IL 128186, which found that the defendant's citation of recent research and articles concerning juvenile brain development and his claim that "he too was 'largely unsettled in [his] characters and habits' " were sufficient to make a *prima facie* showing that *Miller* applied to the defendant for purposes of filing a successive petition. See

17

also *Johnson*, 2020 IL App (1st) 171362, ¶¶ 29-31 (the defendant's affidavit setting forth his childhood and articles discussing developing brain science sufficiently supported his proportionate penalties claim to permit him leave to file his successive petition), *abrogated by Hilliard*, 2023 IL 128186.

¶ 43    As the proceedings continued, counsel retained a psychologist to perform an examination and provide an evaluation in support of defendant's proportionate penalties clause claim, supplementing the response to the State's motion to dismiss with additional factual support. During the hearing on the State's motion to dismiss, held in February 2022, counsel cited *People v. Minniefield*, 2020 IL App (1st) 170541, ¶ 44, *abrogated by Hilliard*, 2023 IL 128186, which remanded a petition for further postconviction proceedings after finding that the "[d]efendant has shown prejudice by establishing a 'catch-22'—without a developed record, he cannot show his constitutional claim has merit, and without a meritful claim, he cannot proceed to develop a record." (Internal quotation marks omitted.) Counsel argued that, in her petition, defendant had set out sufficient allegations and support to warrant an evidentiary hearing at which a full record could be developed. Given the rapidly evolving nature of the case law concerning the matter, we cannot find that counsel failed to adequately present defendant's proportionate penalties clause claim before the circuit court. Accordingly, we cannot find that counsel failed to provide reasonable assistance during the postconviction proceedings.

¶ 44                                  CONCLUSION

¶ 45        The circuit court's dismissal of defendant's successive postconviction petition is affirmed, where postconviction counsel was not ineffective in presenting defendant's proportionate penalties clause claim.

¶ 46        Affirmed.

*People v. McGee*, 2025 IL App (1st) 240445

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 06-CR-01766(03); the Hon. Terry Gallagher, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Victoria Rose, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (John E. Nowak, Matthew Connors, and Noah Montague, Assistant State's Attorneys, of counsel), for the People. |