**2025 IL 129718**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

(Docket No. 129718)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
MICHAEL WILLIAMS, Appellee.

*Opinion filed April 3, 2025.*

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Holder White, Rochford, and O'Brien
concurred in the judgment and opinion.

Justice Overstreet took no part in the decision.

## OPINION

¶ 1 The defendant, Michael Williams, pled guilty to two counts of aggravated battery with a firearm in the circuit court of St. Clair County and was sentenced to two consecutive terms of 10 years' imprisonment. Williams subsequently filed a postconviction petition alleging, *inter alia*, that his trial counsel provided

constitutionally ineffective assistance when counsel allowed the son of the trial judge to participate in a meeting with Williams prior to the entry of his guilty plea.

¶ 2 Williams's postconviction petition was dismissed by the circuit court at the second stage of postconviction proceedings. On appeal, the appellate court reversed the circuit court's order of dismissal on the basis that Williams's postconviction counsel had provided unreasonable assistance. 2023 IL App (5th) 220185-U. Finding that postconviction counsel's failures had made it impossible to address the merits of Williams's postconviction petition, the appellate court remanded the case to the circuit court for further second stage proceedings. For the reasons that follow, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 3 BACKGROUND

¶ 4 In November 2009, Williams was charged with two counts of armed robbery (720 ILCS 5/18-2(a)(4) (West 2008)) and two counts of aggravated battery with a firearm (*id.* § 12-4.2(a)(1)). The charges stemmed from an incident that occurred on November 6, 2009, in which Williams and an accomplice shot and injured a man after stealing his wallet. Assistant Public Defender Chet Kelly was appointed to represent Williams.

¶ 5 In June 2010, Williams filed a motion to suppress the shooting victim's identification of Williams from a photo array, as well as a motion to suppress identification cards belonging to the victim that had been found in Williams's home. Following hearings, the circuit court denied both motions. The case was set for trial on March 7, 2011.

¶ 6 On that date, the parties appeared and announced they were ready for trial. The court then addressed various pretrial motions, the State dismissed one of the two armed robbery counts, and a recess was taken. When the proceedings reconvened approximately one hour later, the parties announced that Williams had decided to enter a negotiated plea of guilty to the two counts of aggravated battery with a firearm. In exchange, the State would dismiss the remaining armed robbery charge and recommend consecutive sentences of 10 years' imprisonment on each count for a total of 20 years.

¶ 7        Before Williams entered his guilty plea, the trial court admonished him pursuant to Illinois Supreme Court Rule 402(a) (eff. July 1, 1997). Williams was advised, *inter alia*, that, with the mandatory 25-year add on for personally discharging a firearm, the sentencing range for armed robbery was 31 years to life and the range for aggravated battery was 6 to 30 years. The court further advised Williams that it could run the "sentences together or all at the same time." The court also advised Williams of the constitutional rights he was giving up by pleading guilty. Williams stated that he understood the admonishments. He also denied that any promises or threats had been made to him in exchange for his guilty plea.

¶ 8        As to the factual basis for his guilty plea, the State indicated that on November 6, 2009, the victim, Alex Ehrhard, and his friend, Ashley Case, were out walking their dogs. As Ehrhard and Case were nearing their home, Williams and an unknown individual, both brandishing guns, approached them. The assailants took Ehrhard's wallet and forced Ehrhard and Case into their home. Once inside, the assailants placed the two on the couch. While the unknown individual held Ehrhard and Case at gunpoint, Williams ransacked the home.

¶ 9        Unable to find anything, Williams approached Ehrhard and Case. After a third person who was present in the home came out of the bedroom, Ehrhard attempted to grab Williams's gun. At that point, Williams said to the other assailant, "He's trying to get the gun. He's trying to get the gun." The other assailant shot Ehrhard in the leg. Ehrhard then let go of Williams's gun, and as he was attempting to sit back down on the couch, Williams shot him in the back. Both Williams and the unknown assailant then fled the scene. During the ensuing investigation, Ehrhard identified Williams from a photo array, and identification cards belonging to Ehrhard were found in Williams's apartment. Williams also told his girlfriend about the incident "hours after it happened." She would have testified for the State had Williams proceeded to trial. Williams declined to make any statement to the court.

¶ 10        After accepting Williams's guilty plea, the circuit court imposed consecutive 10-year sentences on the two counts of aggravated battery with a firearm in accordance with the parties' agreement. The court advised Williams of the requirement to file a motion to withdraw the guilty plea prior to bringing any appeal.

¶ 11    On March 21, 2011, Williams filed a *pro se* motion to withdraw his guilty plea. As grounds for withdrawing the guilty plea, the motion alleged "Ineffective Counseling," "Threat or Coercion," and "Factual Basis Don't [*sic*] Support Plea."

¶ 12    On March 24, 2011, the circuit court conducted a hearing on Williams's *pro se* motion. Although Williams's trial counsel, Chet Kelly, was present at the hearing, Williams represented himself. At the conclusion of the hearing, the circuit court denied Williams's motion to withdraw his plea, finding there was "no credible evidence to suggest in any way that there was ineffective assistance of counsel, threats[,] or coercion." Williams then appealed.

¶ 13    On August 23, 2012, the appellate court reversed the circuit court's judgment on the grounds the trial court had failed to advise Williams of his right to have counsel represent him on his postplea motion and had failed to inquire as to whether Williams wished to waive that right. *People v. Williams*, 2012 IL App (5th) 110144-U. The cause was remanded to the circuit court for further proceedings.

¶ 14    In the circuit court, on February 20, 2013, newly appointed counsel Brian Flynn[1] filed a motion to withdraw Williams's guilty plea on behalf of Williams as well as a Rule 604(d) certificate (Ill. S. Ct. R. 604(d) (eff. Feb. 6, 2013)). The motion alleged generally that Williams's plea had been involuntary due to trial counsel's ineffectiveness and Williams's failure to understand the nature of the charges against him and because Williams had a defense worthy of consideration.

¶ 15    That same day, the circuit court held a hearing on the motion. At the hearing, Williams testified that he decided to plead guilty because his trial counsel had failed to interview witnesses and was generally not prepared to go to trial. On cross-examination, Williams stated that his attorney had "suggested" he accept the State's plea offer of 20 years and had implied they would "definitely lose" at trial. Williams further testified that he believed his attorney had not been prepared for trial because, three days before the trial date, he had stated that he needed to prepare. According to Williams, he felt he had to either take the State's offer or proceed to trial with someone who "wasn't ready." Williams further stated that, weeks before the trial date, he had twice asked his trial counsel to request a continuance so he could hire

---

[1] Brian Flynn represented Williams in the circuit court until the time of the postconviction petition, when Williams retained new private counsel.

a private attorney. Williams acknowledged that when he pled guilty he was aware the minimum sentence he would have received if convicted of armed robbery was 31 years and the maximum was life imprisonment.

¶ 16    Williams's trial counsel, Kelly, testified that plea negotiations had been ongoing with the State and that Williams "knew what was going on at all times." Kelly further stated he had spent weeks preparing for trial and "knew the case forwards and backwards." Kelly stated that he did interview a witness who Williams had directed him to contact and had also confirmed that Williams's girlfriend was going to testify for the State. Kelly explained he had developed a "decent" defense theory but that the State's case was strong. He testified that he had discussed with Williams the State's evidence on several occasions and that Williams had always said he wanted to go to trial but also seemed hesitant to do so. Kelly then stated that when he and Williams discussed Williams's options three days before trial, at which time a 20-year term of imprisonment was on the table, Williams was still "on the fence" and wanted to discuss the situation with his family, which Kelly allowed him to do by providing Williams with his cell phone. On the day when trial was scheduled to start, Williams decided to plead guilty. Kelly indicated that Williams had never expressed dissatisfaction with his representation nor indicated he was not comfortable with him as his attorney. At the conclusion of the testimony, both parties presented arguments, and the court took the matter under advisement.

¶ 17    Thereafter, the trial court entered a written order denying Williams's motion to withdraw his guilty plea. The court found there was no evidence supporting Williams's claims that trial counsel was unprepared or incompetent and, therefore, had been ineffective. The court noted that the 20-year sentence was a benefit Williams had bargained for and received but he was now merely "unhappy" with that choice. The court found that Williams might not have liked the choices he faced, *i.e.*, 20 years' imprisonment versus 31 years to life, but that did not mean his guilty plea was involuntary. Additionally, the court noted that Williams had been given numerous opportunities to object to the plea but did not. Williams again appealed.

¶ 18    On July 29, 2013, the appellate court again vacated the circuit court's judgment and remanded the cause to the trial court for further proceedings. The appellate

court held that the Rule 604(d) certificate provided by Williams's postplea counsel, Flynn, was defective because it failed to state he had examined the court file or made any necessary amendments to Williams's motion to withdraw. *People v. Williams*, No. 5-13-0148 (July 26, 2013) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 19 On August 20, 2013, Flynn filed an amended motion to withdraw Williams's guilty plea as well as a new Rule 604(d) certificate. In addition to realleging Williams's previous claims, the motion further alleged that Williams had not been properly admonished by the court pursuant to Rule 402 and had not been properly admonished as to the potential sentencing range. The new Rule 604(d) certificate stated, in pertinent part, that counsel had "consulted with the defendant either by mail or in person to ascertain the defendant's contentions of error in the sentence and/or plea of guilty."

¶ 20 On November 10, 2015, the circuit court conducted a hearing on Williams's amended motion to withdraw his guilty plea. Williams's counsel asked the court to review the transcripts of the previous hearings on the motion to withdraw the guilty plea and the plea proceedings, and to reconsider its previous ruling denying the motion to withdraw the guilty plea. Counsel further advised the court that Williams was abandoning his claim that he had not been properly admonished as to the potential sentencing range. In response, the State also asked the court to review the prior transcripts. The court took the matter under advisement.

¶ 21 On November 12, 2015, the circuit court entered a written order denying Williams's motion to withdraw his guilty plea. The court stated it could "find nothing to support the defendant's allegation that [the Rule] 402 admonishments were lacking or that the plea was not involuntary." Williams again appealed, arguing the cause had to be remanded because the Rule 604(d) certificate was again defective. On September 13, 2018, the appellate court agreed and again remanded the cause to the trial court. *People v. Williams*, 2018 IL App (5th) 160076-U.

¶ 22 On May 16, 2019, Flynn filed a new Rule 604(d) certificate. The cause proceeded to a hearing in the trial court on June 19, 2019, with Williams present. Counsel asked the court to review the previous transcripts and arguments. The State agreed. The court took the matter under advisement.

¶ 23    On June 20, 2019, the circuit court entered an order denying Williams's motion. The court indicated it had reviewed all previous transcripts, including the plea and sentencing hearings, as well as all evidence and arguments and previous orders. Williams again appealed.

¶ 24    On April 20, 2020, the appellate court affirmed the trial court's ruling. *People v. Williams*, 2020 IL App (5th) 190264-U. On November 18, 2020, this court denied Williams's petition for leave to appeal.

¶ 25    On September 23, 2021, privately retained counsel, Ryan Martin, filed a "Verified Petition for Post-Conviction Relief" as well as a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). The postconviction petition, which is at issue in this appeal, advanced three claims. First, the petition alleged that Williams's due process rights were violated when the circuit court failed to properly admonish Williams regarding possible consecutive sentences when it stated that it "could run those sentences together or all at the same time, depending on how the evidence comes in." According to the petition, neither "together or all at the same time" means consecutive.

¶ 26    Second, the petition alleged that the trial court had failed to state on the record that consecutive sentences were necessary for the protection of the public. According to the petition, this failure amounted to a violation of Williams's due process rights.

¶ 27    Third, the petition alleged that trial counsel had provided ineffective assistance of counsel "resulting in a substantial likelihood that the outcome of Petitioner's guilty plea and sentencing would have been different were he afforded effective assistance of counsel." Specifically, the petition alleged that, "[w]hile visiting Petitioner at the St. Clair County Jail, trial counsel allowed C.J. Baricevic, the son of the judge presiding over Petitioner's case, to accompany him during a privileged attorney-client meeting when important points of Petitioner's case were discussed." According to the petition, during this meeting, "the three of them discussed the State's evidence, Petitioner's role in the case, and whether or not Petitioner should enter a guilty plea." The petition further alleged that "[t]rial counsel did not reveal to Petitioner that Baricevic is the son of the judge who presided over Petitioner's case, nor did he explain why he allowed Baricevic to attend the meeting."

Moreover, "[p]etitioner did not know at that time that Baricevic was the judge's son but assumed that he was a member of his trial counsel's legal team."[2]

¶ 28    Attached to the postconviction petition was Williams's sworn affidavit. In the affidavit, Williams stated that "My attorney Chet Kelly came to visit me with C.J. Baricevic whom I discovered was the son of my trial judge and I could not continue to trial with Chet as my attorney." Williams further stated that "During an interview with my attorney while he and I discussed matters of my case C.J. Baricevic was in the interview room."

¶ 29    On October 7, 2021, the circuit court entered an order advancing the matter to the second stage because the petition "raise[d] the gist of at least one constitutional claim." On November 16, the State filed a motion to dismiss. In that motion, the State contended that all of Williams's claims "that trial [counsel] was ineffective fail to satisfy either prong of the *Strickland* test." See *Strickland v. Washington*, 466 U.S. 468 (1984). With respect to the alleged defective admonishments, the State argued that Williams was unable to establish he suffered prejudice as a result of the admonishments and that any defect "had absolutely no material effect on the outcome of the plea or sentence." Additionally, the pleadings were "void of any allegation that he would not have pleaded guilty had he received proper admonishments." The State also maintained that Williams failed to raise this issue in his motion to withdraw his guilty plea, nor did he raise it on direct appeal and, therefore, he should be barred from raising it now.

¶ 30    With respect to Williams's second claim, the State argued that the circuit court was required to impose mandatory consecutive sentences in this case based on the fact Williams had inflicted severe bodily injury on the victim. The State also maintained that Williams was barred from raising this claim because he did not include it in his motion to withdraw his guilty plea and did not raise it on direct appeal.

¶ 31    Lastly, with respect to Williams's third claim, the State argued that, "[a]ssuming arguendo that C.J. Baricevic accompanied trial counsel on a visit to

_____

[2]Apart from the allegations in Williams's postconviction petition, the record does not reveal anything further regarding C.J. Baricevic. However, we take judicial notice that Baricevic was admitted to practice law on November 10, 2011.

Defendant at the St. Clair County Jail, Defendant fails to articulate how trial counsel's performance was deficient or how he was prejudiced by C.J.'s attendance. He further fails to articulate that, but for trial counsel's ineffectiveness, he would not have entered into his negotiated plea." The State also maintained this claim was barred because it was not raised in Williams's motion to withdraw his guilty plea or on direct appeal.

¶ 32    The court held a hearing on the postconviction petition on February 18, 2022. The State stood on its motion and made no further arguments. As to the first two claims, Williams's attorney argued the court should consider fundamental fairness in allowing [Williams] to receive an evidentiary hearing" on these claims and not find them "waived."

¶ 33    With respect to the third claim, Williams's counsel maintained it was not "waived" because it was based on matters outside the record. The court then inquired of counsel: "So tell me why he was not able to argue to the Appellate Court that he was denied effective assistance of counsel because what he alleges is the Judge's son going to the jail with his attorney to talk to him about his case?" Counsel responded: "Yeah, and that's why I think that we need an evidentiary hearing on it, Judge. I don't know from the appellate counsel's filings and stuff whether, you know, they had talked about that but he certainly alleges it now." The court then stated: "You've got to satisfy the two prongs of *Strickland* and I'm not seeing the nexus between what about the fact that CJ Baricevic if, in fact, he did visit your client at the *** Jail, what about that that satisfies either of the prongs of Strickland?" Counsel responded that Williams's assertion that he could not continue to trial with Kelly as his attorney satisfied both prongs of *Strickland* and that "he would have [gone] to trial but for this incident." The court then stated,

> "There needs to be a stronger showing that if in fact what defense he would have posed if he had gone to trial and why he would have gone to trial and risk a life sentence rather than a recommended sentence of 11 years. *** [H]e has to do more than say I would have gone to trial. He has to establish some reasonable defense that he would have posed that would convince me that he would have in fact gone to trial rather than to take a plea of guilty."

Counsel responded,

"Well, I think he was sitting in there and he found out that Mr. Baricevic was the son of the trial judge and he felt pressured in that situation that, you know, he couldn't continue with Chet Kelly in that having this situation had occurred. So I mean I think that that there tells the Court that he would have [gone] to trial but for this incident."

The circuit court took the matter under advisement.

¶ 34    On February 22, 2022, the trial court entered an order finding Williams failed to make a substantial showing of a constitutional violation. Accordingly, it granted the State's motion to dismiss. Williams again appealed.

¶ 35    On appeal, Williams raised only one contention, namely, that his postconviction counsel had provided unreasonable assistance. The appellate court agreed with this contention and reversed the circuit court's dismissal of Williams's postconviction petition. 2023 IL App (5th) 220185-U. The appellate court noted that, in a postconviction proceeding, the level of attorney assistance guaranteed to the petitioner "is not the same as the level of assistance constitutionally mandated at trial or on direct appeal; instead, the level of assistance required is reasonable assistance." *Id.* ¶ 15. Applying this standard, the court concluded that the performance of Williams's postconviction counsel was objectively unreasonable with respect to Williams's claim that his trial counsel had provided ineffective assistance during the plea proceedings. *Id.* ¶ 26.

¶ 36    According to the appellate court, although postconviction counsel put forward a claim of ineffective assistance of trial counsel, (1) he "entirely failed to allege" in the postconviction petition, and support factually, the prejudice required as an element of that claim, and (2) when this was brought to his attention by the State's motion to dismiss the postconviction petition, he filed no written response or request to amend the petition, and at the hearing on the petition, he was unprepared to address this problem. *Id.* The appellate court further found that postconviction counsel was unable to muster facts and arguments that were not vague and conclusory, in support of the prejudice prong under the *Strickland* test. *Id.* According to the appellate court, all of this meant that the claim of ineffective assistance of plea counsel had no chance of succeeding. *Id.*

¶ 37    The appellate court assumed that, to establish that postconviction counsel rendered unreasonable assistance, Williams had to show that he was prejudiced by counsel's actions. That is, Williams had to show that the outcome of the postconviction proceeding would have been different if counsel had performed reasonably. *Id.* ¶ 21.

¶ 38    However, using the reasoning in *People v. Johnson*, 2022 IL App (1st) 190258-U, the appellate court stated that

> "if it is clear from the record that the defendant did not receive reasonable assistance of postconviction counsel, and it is equally clear that, because of a paucity of the record *caused* by postconviction counsel's lack of reasonable assistance, the appellate court cannot tell whether the defendant was prejudiced thereby, the appropriate remedy is for the appellate court to reverse the order dismissing the petition, and to remand for further second-stage proceedings with new counsel." (Emphasis in original.) 2023 IL App (5th) 220185-U, ¶ 21.

The appellate court found that, in this case, postconviction counsel's

> "pleading failure has led to a paucity of the record that, as was the case in *Johnson*, makes it impossible for this court to determine if the defendant suffered prejudice as a result of [counsel's] unreasonable assistance, because the result of [counsel's] pleading failure is that there are no factual allegations from which this court could determine whether a decision to reject the plea bargain would have been rational under the circumstances of this case." *Id.* ¶ 26.

As such, the appellate court remanded the case to the circuit court for a new second stage proceeding with new counsel. *Id.* ¶ 29.

¶ 39    We granted the State's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2021).


¶ 40                                    ANALYSIS

¶ 41    At issue in this appeal is whether the circuit court correctly dismissed Williams's postconviction petition. We review *de novo* the circuit court's dismissal of a postconviction petition. *People v. Agee*, 2023 IL 128413, ¶ 34. We also review

*de novo* the question of whether postconviction counsel provided reasonable assistance. *People v. Perkins*, 229 Ill. 2d 34, 41-42 (2007).

¶ 42    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) provides for a three-stage process for adjudicating postconviction petitions. *Agee*, 2023 IL 128413, ¶ 36. At the first stage, the circuit court must independently review the petition and determine whether it is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018). If the court determines that the facts alleged in the petition state an arguable claim of a constitutional deprivation, the petition advances to the second stage. *Agee*, 2023 IL 128413, ¶ 36. At that stage, the court may appoint counsel to assist an indigent defendant. 725 ILCS 5/122-4 (West 2018). Additionally, at that stage, the State may file a motion to dismiss or an answer to the petition. *Id.* § 122-5; *Agee*, 2023 IL 128413, ¶ 37. In evaluating a motion to dismiss, the circuit court must determine whether the petition and supporting documentation make a substantial showing of a constitutional violation. *Agee*, 2023 IL 128413, ¶ 37. If so, the petition advances to the third stage for an evidentiary hearing. *Id.* If not, the petition should be dismissed. *Id.*

¶ 43    In postconviction proceedings, there is no constitutional right to counsel. *Id.*; see *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). However, this court has determined that the Act requires postconviction counsel to provide a reasonable level of assistance. *Agee*, 2023 IL 128413, ¶ 41; *People v. Cotto*, 2016 IL 119006, ¶ 30; *People v. Turner*, 187 Ill. 2d 406, 410 (1999). The same standard applies to both appointed counsel and retained counsel. *Cotto*, 2016 IL 119006, ¶ 40. Whether counsel has provided a reasonable level of assistance will necessarily depend on the unique facts of each case.

¶ 44    In this case, Williams's postconviction petition alleged that trial counsel's performance was deficient in that counsel brought C.J. Baricevic, the trial judge's son, to a meeting with Williams at the jail where Williams was being held prior to trial. The petition further alleged prejudice, in that it stated that there was a "substantial likelihood" that the result of the plea hearing and sentencing would have been different had the meeting with Baricevic not occurred. In addition, the petition was supported with Williams's affidavit in which Williams averred that trial counsel brought Baricevic to a meeting and that he could not continue to trial with the same attorney.

- 12 -

¶ 45        The appellate court concluded that postconviction counsel's performance in setting forth this claim was "objectively unreasonable." 2023 IL App (5th) 220185-U, ¶ 26. The appellate court noted that a conclusory allegation that a defendant would not have pled guilty and would have demanded a trial is insufficient to establish prejudice for purposes of a claim of ineffective assistance of trial counsel. *Id*. ¶ 22. Rather, a defendant who pleads guilty, and later raises a claim of counsel's incompetence, must also support that claim with an assertion of innocence or the articulation of a plausible defense that could have been raised at trial. *Agee*, 2023 IL 128413, ¶ 51. Williams's petition did not contain such supporting assertions, and for that reason, the appellate court concluded that counsel "entirely failed to allege—and support factually—the prejudice required as an element of" Williams's claim of ineffective assistance of trial counsel. 2023 IL App (5th) 220185-U, ¶ 26.

¶ 46        In reaching this conclusion, the appellate court incorrectly assumed there were additional facts and allegations that counsel could have included in the petition. However, there is nothing in the record to demonstrate Williams had a viable defense, and before this court, Williams does not suggest that such facts exist or that such a defense could have been alleged. Postconviction counsel did not perform unreasonably in this case simply because his arguments were without merit (see *Perkins*, 229 Ill. 2d at 51) or because he was unable to make the petition's allegations factually sufficient to require the granting of relief (see *People v. Spreitzer*, 143 Ill. 2d 210, 221 (1991)). The appellate court erred in concluding that the postconviction petition failed to persuade the circuit court due to counsel's performance, rather than simply the petition's lack of merit. Moreover, we note that the petition survived the first stage and was advanced to the second stage. Clearly, the trial court did not find the petition deficient or frivolous.

¶ 47        In finding unreasonable assistance, the appellate court also stressed that Williams's postconviction counsel failed to file an answer to the State's motion to dismiss or to amend the postconviction petition in response to the State's motion. However, the appellate court did not cite any authority that requires counsel to do either of those things, and the failure to do so, by itself, does not equate to unreasonable assistance of counsel. In this regard, the appellate court stressed the "paucity" of the record and again appeared to assume that there were additional facts or arguments available for counsel to include in a response to the State. 2023 IL App (5th) 220185-U, ¶ 26. However, as noted, nothing in the record before this

court suggests that there are other facts or arguments counsel could have added to the postconviction petition. The appellate court erred in assuming that such facts or arguments existed.

¶ 48    In addition, contrary to the appellate court's conclusion, Williams's counsel responded appropriately during the hearing on the postconviction petition. It must be emphasized that counsel was in a difficult position. Williams himself had stated, at the hearing on his motion to withdraw his guilty plea, that he accepted the guilty plea because he faced a term of imprisonment from 31 years to life, a term significantly longer than Williams's negotiated sentence. Further, Williams had acknowledged that his likelihood of succeeding at trial was low and that he could not think of any new, plausible defense that could have been raised at trial. Faced with these facts, counsel made the only argument available, specifically that Williams "would have [gone] to trial" if C.J. Baricevic had not been at the pretrial meeting. The circuit court rejected this argument, concluding that nothing in the record regarding C.J. Baricevic's presence at the pretrial meeting established that there was a reasonable probability Williams would not have accepted the plea bargain, which clearly was beneficial to him.

¶ 49    Counsel's arguments to the circuit court were unsuccessful. However, where, as here, the record shows that under the circumstances the arguments postconviction counsel raised were the best options available, counsel cannot be said to have rendered an unreasonable level of assistance even if the arguments lacked legal merit, were not particularly compelling, and were ultimately unsuccessful. See *Perkins*, 229 Ill. 2d at 51. The appellate court failed to recognize this principle.

¶ 50    Lastly, Williams maintains that counsel was unreasonable because he failed to consult with him. Williams's bare allegation that counsel failed to consult with him does not find support in the record. We note, moreover, that postconviction counsel attached defendant's affidavit to the postconviction petition, thereby demonstrating that counsel communicated with Williams. Accordingly, for these reasons, we reverse the appellate court's holding that Williams's postconviction counsel provided unreasonable assistance.

¶ 51 CONCLUSION

¶ 52 For the foregoing reasons, we reverse the judgment of the appellate court.

¶ 53 Appellate court judgment reversed.

¶ 54 Circuit court judgment affirmed.

¶ 55 JUSTICE OVERSTREET took no part in the consideration or decision of this case.