2026 IL App (1st) 240760-U

No. 1-24-0760

Order filed January 21, 2026

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 92 CR 19827 |
| | ) | |
| JAKEEN SAVAGE, | ) | Honorable |
| | ) | Michael R. Clancy, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE MARTIN delivered the judgment of the court.
Justices Rochford and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Order dismissing postconviction petition affirmed where defendant failed to establish that postconviction counsel rendered unreasonable assistance in advancing his as-applied proportionate penalties claim.

¶ 2    Defendant Jakeen Savage appeals from a circuit court order dismissing his petition filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2016)). He contends that postconviction counsel provided unreasonable assistance by failing to amend his

*pro se* petition and articulate his as-applied proportionate penalties claim during the hearing on the State's motion to dismiss. We affirm.[1]

¶ 3                                   I. BACKGROUND

¶ 4      Savage was charged with the first degree murder of Brian Keyes and the attempted first degree murder of Leon Reed. Following a 1994 bench trial, he was convicted of both offenses and sentenced to consecutive prison terms of 60 and 25 years, respectively.

¶ 5      We summarize the trial evidence as relevant to the nature and severity of Savage's offenses. On August 12, 1992, Savage went to the apartment of Ronald Allen and Reed. Allen was in the hall when he saw Savage—who had robbed Allen at gunpoint a few months earlier in the same apartment building—enter the apartment with a firearm in his hand. In the front room playing cards were Keyes, Reed, neighbor Sandra Hampton, and Lynn Cooper, who was Keyes's mother and Reed's aunt. Savage fired once into the ceiling, announced a "stickup" or "holdup," and put the firearm to Keyes's head. When Reed threw the table over as a distraction, Savage shot Keyes once in the head, fatally. He then demanded "dope" from Reed and shot Reed twice in the stomach. While Reed and Hampton denied at trial that Keyes and Savage struggled for the firearm before Savage shot Keyes, they gave earlier statements that such a struggle occurred.

¶ 6      The presentencing investigation report (PSI) presented at the 1995 sentencing hearing reflected that Savage was 22 at the time of the offense. The PSI indicated a prior conviction for possession of a controlled substance in 1992, for which he received a year of probation.

¶ 7      Savage reported in the PSI that his mother and stepfather beat him with extension cords when he was "bad." At 13, he joined a gang and began abusing alcohol. Starting at 14, Savage

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

used the hallucinogen PCP twice a month and marijuana daily. By the time he was 19, he was a heavy drinker and used cocaine daily. Savage reported that he quit using drugs and left the gang while incarcerated. He left school in the 10th grade due to a "bad gang situation," but attended the Job Corps for three months in 1988 (before being expelled for disciplinary reasons) and eight months in 1989. He worked as an assistant plumber for about five months in 1990, a dishwasher and busboy for the remainder of 1990, and he was a manager of and maintenance worker for a pub for about eight months in 1991.

¶ 8     As to Savage's physical health, the PSI stated that he has asthma and was shot in the arm in 1991 in what he admitted was a probable gang shooting. As to his mental health, Savage was 14 when he was hospitalized at Hartgrove Hospital for over a month, receiving psychotherapy and family therapy. Attached to the PSI was Savage's 1986 discharge report from Hartgrove noting that: (1) he was diagnosed with both dysthymic disorder, also known as persistent depressive disorder, and conduct disorder; (2) his mother reported he threatened her and she "fear[ed] that he might do physical harm to her;" (3) "his behavior deteriorated about six years ago" when he began "using a considerable amount of drugs;" and (4) his "[i]ntellectual functions were not impaired."

¶ 9     At his sentencing hearing, after Savage waived his right to a sentencing jury, the court found Savage eligible for the death penalty but remarked it was "not inclined to impose" that penalty. The parties stipulated that Savage (1) pled guilty to criminal trespass to a vehicle in 1991 and received four months of supervision, and (2) was still on probation for his 1992 controlled substance offense when he committed the instant offense.

¶ 10     In aggravation, an assistant state's attorney (ASA) testified that Savage gave a statement after the instant offense. Savage admitted that he went to the apartment with a firearm to "stick up the dope dealers." He demanded money, and one of the two men who had been playing cards

grabbed his wrist and grappled for the firearm before it discharged, striking that man in the head. Savage shot the other man before leaving.

¶ 11    The ASA also testified that Savage gave a statement admitting to a robbery on May 27, 1992, in the same apartment building as the August 12, 1992, incident, in which he used a "bee-bee gun" and joined a man to commit the robbery of "dope peddlers."

¶ 12    In mitigation, a jail superintendent testified that Savage had neither received any disciplinary reports nor proceedings against him since he was arrested in August 1992.

¶ 13    Savage's mother testified that Savage had "a behavioral problem" and "was hanging out with the wrong boys" from about age 13 or 14, so she sought help for him at Hartgrove. He later enrolled in the Job Corps and was employed. She noticed that Savage was different since his incarceration, as he was "into a religion now" and "wants to help other people."

¶ 14    In allocution, Savage apologized but also insisted that he was not a "killer," because he "didn't go in intentionally trying to hurt" anyone and had "a drug problem."

¶ 15    Following arguments, the sentencing court stated that it would not impose the death penalty but rather sentence Savage to consecutive prison terms of 60 and 25 years. It found that Savage was not "beyond rehabilitation at this point," "had apparently made "a good adjustment to living in an institution," and mentioned that Savage's "young age is in mitigation." However, the court said it would "take a very, very lengthy term of incarceration before [it] would be willing to set [Savage] out among free society again." The court found that Savage's offenses were "very, very serious," because of both "what [he] started out to do," going after victims "he believed *** to be an easy mark," and "what [he] wound up doing once [he] got into the robbery." The court noted that consecutive sentencing was mandatory but remarked that, "even if that were not the case, ***

protection of the public requires that the defendant be incarcerated for that length of time *** because *** his rehabilitation will take that long."

¶ 16    We affirmed on direct appeal and allowed counsel to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967). *People v. Savage*, No. 1-95-0649 (1996) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 17    On September 15, 2017, Savage filed the instant *pro se* petition for postconviction relief, claiming his aggregate 85-year sentence violated the Illinois Constitution's requirement that penalties have "the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. He cited multiple United States Supreme Court decisions, including *Miller v. Alabama*, 567 U.S. 460 (2012), for the principle that children "cannot be held to the same standard of culpability as adults in sentencing" due to the "lack of maturity, underdeveloped sense of responsibility, vulnerability to peer pressure, and the less fixed nature of the juvenile's character." He argued that *People v. House*, 2015 IL App (1st) 110580, extended that principle to young adults.

¶ 18    Savage alleged he had been a drug addict since age nine, he was "under the sway of adult gangbangers," and highlighted that he "was 22 yrs. old with a mind soaked in drugs since childhood" at the time of his offenses. He claimed his long-term addiction and young age left him "more susceptible to peer pressure" and "more volatile in emotionally charged settings." Savage argued that his sentence failed to account for the fact that he could be restored to useful citizenship.

¶ 19    In his attached affidavit, Savage averred that he "was 22 yr. old and abusing drugs on a daily basis" when he "attempted to rob a drug house and got into a position of having to kill someone or be killed." His life had since been saved by his incarceration, as he learned to avoid gangs, he became a "just and righteous person," and "conquered [his] drug habit."

¶ 20    On October 27, 2017, the circuit court summarily dismissed Savage's petition.

¶ 21 On appeal, we reversed the court's summary dismissal and remanded for second-stage postconviction proceedings. *People v Savage*, 2020 IL App (1st) 173135, ¶ 79. This court observed that Savage was 22 at the time of his offenses and "offenders who are 18 years and older cannot raise a facial challenge to their sentences" under *Miller* and its eighth amendment progeny. *Id.* ¶ 59. We noted that Savage's eighth amendment argument was that "his youth *in conjunction with* his drug addiction and other issues demonstrate" that he was "the functional equivalent of a juvenile and, thus, his sentence is unconstitutional as applied to him." (Emphasis in original.) *Id.* ¶ 60. We explained that "Illinois courts typically consider the sentencing claims of young adults under the proportionate penalties clause rather than the eighth amendment," since the proportionate penalties clause "goes further than the eighth amendment in offering protection against oppressive penalties." *Id.* ¶¶ 61, 65. This court found support in the record and recent proportionate penalties caselaw for Savage's sentencing argument, so "it cannot be considered frivolous and patently without merit." *Id.* ¶¶ 57-58, 61, 70, 76 (citing *People v. Holman*, 2017 IL 120655, ¶¶ 40-46, and *People v. House,* 2019 IL App (1st) 110580-B, ¶ 59).

¶ 22 On remand, postconviction counsel was appointed for Savage. Counsel requested records and periodically informed the court that he was reviewing those records. On January 12, 2022, counsel told the court he was preparing a "mitigation packet" with a "mitigation expert."

¶ 23 On April 22, 2022, postconviction counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) averring that he (1) communicated with Savage by letter and telephone to ascertain his claims, (2) reviewed the record, and (3) concluded that Savage's "*pro se* filings adequately address all of [his] claims."

¶ 24 The State filed a motion to dismiss the petition, arguing that Savage had failed to demonstrate that his sentence was unconstitutional because (1) only defendants who were minors

at the time of their offense have eighth amendment *Miller* claims, and Savage was 22 when he committed his offenses, and (2) Savage was an active participant in his offenses, he did not face a mandatory life sentence, and the sentencing court could and did consider evidence in mitigation, so there was no proportionate penalties violation.

¶ 25    The court held a hearing on the State's motion on February 22, 2024. After the State rested, postconviction counsel argued that Savage had met his burden of showing a constitutional violation regarding his sentence. Counsel stated that Savage was 22 years old at the time of the offenses, and Savage was asking the court "to apply the *Miller* protections to [Savage] based on his significant history of drug use." The court asked if *Miller* "applies to a 22-year-old," and counsel replied, "I do not have any support for that. [Savage] is asking your Honor to make that determination." Counsel confirmed that he was asking the court to "forge ahead with some new case law."

¶ 26    On March 26, 2024, the circuit court granted the State's motion and dismissed Savage's petition. The court noted that the petition challenged Savage's sentence under both the eighth amendment and the proportionate penalties clause. The court stated that this court applied *Holman*, 2017 IL 120655, to Savage despite his "advanced age" by deeming that his drug addiction had made him functionally equivalent to being a juvenile. The court noted that caselaw had significantly changed since *Holman* and this court's remand order. It pointed out our supreme court's remarks in *People v. Hilliard*, 2023 IL 128186, ¶ 28, that this court's remand of Savage's sentencing claim (*Savage*, 2020 IL App (1st) 173135) had "infirmities." See *Hilliard*, 2023 IL 128186, ¶ 28 (calling this court's remand into doubt as " '*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a

claim under the proportionate penalties clause' " in a successive postconviction petition and "*Miller* applies to neither discretionary sentences nor adults" (internal citations omitted)).

¶ 27    The circuit court found that due to these legal developments, Savage "no longer possesses nor presents a viable pathway towards vacating his sentence." Thus, the court "must determine only that the sentencing court used a discretionary sentencing scheme when levying a *de facto* life sentence." The circuit court found no constitutional violation, as the sentencing court expressly found that Savage's "young age is in mitigation" and heard extensive testimony on his drug addiction and its impact.

¶ 28                                    II. ANALYSIS

¶ 29    On appeal, Savage contends that his postconviction counsel provided unreasonable assistance by failing to amend his *pro se* petition or articulate his as-applied proportionate penalties claim during the hearing on the State's motion to dismiss.

¶ 30    There are three stages of postconviction proceedings under the Act. *People v. Harris*, 2025 IL 130351, ¶ 32. At the first stage, the circuit court may summarily dismiss a petition within 90 days of filing if it is frivolous or patently without merit. *Id.*; 725 ILCS 5/122-2.1 (West 2016). A petition not summarily dismissed advances to the second stage, where a defendant must make a substantial showing of a constitutional violation. *Harris*, 2025 IL 130351, ¶ 39. The court may appoint counsel for an indigent defendant, the petition may be amended as necessary, and the State may answer the petition or file a motion to dismiss. 725 ILCS 5/122-4, 122-5 (West 2016). A petition not dismissed at the second stage proceeds to the third stage, an evidentiary hearing. *Harris*, 2025 IL 130351, ¶ 39. Our review of the dismissal of a postconviction petition at the second stage, as here, is *de novo*. *People v. Williams*, 2025 IL 129718, ¶ 41.

¶ 31     While there is no constitutional right to counsel during postconviction proceedings, postconviction counsel's duty is to provide the level of assistance required by the Act, which is reasonable assistance. *Id*. ¶ 43. The "Act cannot perform its function unless the attorney appointed to represent an indigent petitioner ascertains the basis of his complaints, shapes those complaints into appropriate legal form, and presents them to the court." *People v. Lesley*, 2018 IL 122100, ¶ 33. Reasonable assistance does not require counsel to make amendments that would only further a frivolous or patently unmeritorious claim. *People v. Huff*, 2024 IL 128492, ¶ 22. Counsel does not perform unreasonably when counsel cannot make the petition's allegations factually sufficient to grant relief, or when counsel's arguments were the best counsel could make under the circumstances. *Williams*, 2025 IL 129718, ¶¶ 46, 49.

¶ 32     The duty of reasonable assistance has been codified in Rule 651(c), which requires postconviction counsel to file a certificate, or otherwise state on the record, that counsel

> "consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c).

Counsel's certification creates a rebuttable presumption that counsel provided a reasonable level of assistance, which a defendant claiming unreasonable assistance has the burden of rebutting. *Huff*, 2024 IL 128492, ¶¶ 22-23. Thus, where counsel filed a Rule 651(c) certificate and made no amendments, we presume "that there were none to be made." *Id*. ¶ 24. We review *de novo* whether postconviction counsel provided reasonable assistance. *Williams*, 2025 IL 129718, ¶ 41.

¶ 33     Here, Savage's postconviction counsel filed a facially valid Rule 651(c) certificate. Savage therefore bore the burden of rebutting the presumption that his counsel provided reasonable

assistance. *Huff*, 2024 IL 128492, ¶¶ 22-23. To make that showing, Savage challenges the reasonableness of counsel's assistance in advancing his as-applied proportionate penalties claim.

¶ 34 The proportionate penalties clause of the Illinois constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. While Illinois courts generally defer to the legislature in establishing criminal penalties, the legislature must consider the constitutional goals of restoring an offender to useful citizenship and providing a penalty appropriate to the seriousness of the offense. *People v. Leon Miller*, 202 Ill. 2d 328, 338 (2002).

¶ 35 Our supreme court recognizes two types of violations of the proportionate penalties clause: where (1) the penalty is harsher than the penalty for a different offense containing identical elements, or (2) the punishment is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community. *Hilliard*, 2023 IL 128186, ¶ 20. In applying the latter, a court considers "the gravity of the defendant's offense in connection with the severity of the statutorily mandated sentence within our community's evolving standard of decency." (Internal quotation marks omitted.) *Id.* There is no indication in our constitution that the possibility of rehabilitating an offender is to be given greater weight or consideration than the seriousness of the offense in determining a proper penalty. *Id.* ¶ 40.

¶ 36 Savage contends that his petition argued that his sentence was disproportionate as applied to him due to his young age and drug addiction. We find that Savage's petition and supporting affidavit, liberally construed, provided a factual record to pursue such a claim. See *Hilliard*, 2023 IL 128186, ¶ 19 (postconviction petitions are liberally construed). The petition expressly claimed that Savage's sentence violated the proportionate penalties clause of the Illinois constitution, and it challenged the sentence based on Savage's age of 22 at the time of the offense "with a mind

soaked in drugs since childhood." Savage's affidavit referenced his age, daily abuse of drugs, and how he had become a "just and righteous person" while incarcerated.

¶ 37    However, we also find that no amendment to the *pro se* petition by counsel was "necessary for an adequate presentation of [Savage's] contentions." Ill. S. Ct. R 651(c) (eff. Jul 1, 2017). Citing additional case law to bolster the long-standing principle that a defendant may challenge his sentence on the grounds that it shocks the moral sense of the community would not have further advanced Savage's claim. Savage therefore has failed to demonstrate that postconviction counsel provided unreasonable assistance for failing to amend his *pro se* petition.

¶ 38    Savage also contends that counsel provided unreasonable assistance at the hearing on the State's motion to dismiss. He asserts that counsel failed to argue his proportionate penalties claim that his sentence shocks the moral sense of the community as his brain was more like a juvenile than that of an adult, and further failed to ensure the court considered that claim. Instead, counsel asked the court to apply the *Miller* protections to Savage, which this court already found foreclosed. *Savage*, 2020 IL App (1st) 173135, ¶ 59 ("It is well established that offenders who are 18 years and older cannot raise a facial challenge to their sentences under the eighth amendment and the *Miller* line of cases.") As our supreme court held in *Hilliard*, " '*Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause' " in a successive postconviction petition and "*Miller* applies to neither discretionary sentences nor adults." *Hilliard*, 2023 IL 128186, ¶ 28.

¶ 39    However, at the hearing on the motion to dismiss the petition, counsel argued that Savage should receive relief based on his young age and drug addiction. Although counsel did not couch the argument in the context of an as-applied proportionate penalties claim, the circuit court's

written order acknowledged that Savage's petition contained a proportionate penalties claim, so we cannot conclude that the court was unaware of the claim when it dismissed the petition.

¶ 40    Further, while counsel did not make a cohesive argument during the hearing that Savage was presenting an as-applied proportionate penalties claim that his sentence shocked the moral sense of the community based on the combined effect of Savage's age and drug addiction, counsel was not required to do so in order to provide reasonable assistance. No such argument would have been objectively a better argument under the circumstances and caselaw existing at that time. Where "the record shows that under the circumstances the arguments postconviction counsel raised were the best options available, counsel cannot be said to have rendered an unreasonable level of assistance even if the arguments lacked legal merit, were not particularly compelling, and were ultimately unsuccessful." *Williams*, 2025 IL 129718, ¶ 49.

¶ 41    As postconviction counsel admitted at the dismissal hearing, there was no caselaw supporting relief for a 22-year-old, referring to a proportionate penalties claim based on the principles in *Miller v. Alabama* and its progeny. By that time, the relevant proportionate penalties legal landscape was largely shaped by *People v. Clark*, 2023 IL 127273, *People v. Buford*, 2023 IL App (1st) 201176, and *Hilliard*, 2023 IL 128186, none of which would provide Savage—an adult subject to a discretionary sentence—with relief on a *Miller*-based proportionate penalties clause claim.

¶ 42    In *Clark*, after observing that it had not barred young adult defendants of 18 or 19 from "raising as-applied proportionate penalties clause challenges to life sentences based on the evolving science on juvenile maturity and brain development," our supreme court noted that "[n]one of the defendants in those cases were over the age of 21," while the *Clark* defendant was 24. *Clark*, 2023 IL 127273, ¶¶ 87, 88.

¶ 43    This court similarly recognized in *Buford* that nearly all of the cases that the defendant cited in support of his *Miller*-based claim that "his *de facto* life sentence violates the proportionate penalties clause because his brain was akin to that of a juvenile when he committed the offenses at age 22," were "advanced by defendants who were 18 or 19 years old at the time they committed the offenses, rather than 22 years old." *Buford*, 2023 IL App (1st) 201176, ¶ 45. The court reiterated that " 'the line of adulthood has been drawn at age 21.' " *Id.* ¶ 49 (quoting *People v. Green*, 2022 IL App (1st) 200749, ¶ 42).

¶ 44    The court rejected Savage's reliance on the prior decision in the instant case (*Savage*, 2020 IL App (1st) 173135) as support for particular "consideration of [his] age and its attendant characteristics" at sentencing where he was also 22 at the time of the offense and struggled with drug and alcohol abuse. *Id.* ¶ 48. The court explained that *Savage* was "an outlier in the developing case law regarding youthful offenders," apparently "the only reported decision of this court extending *Miller*-based sentencing protections [citation] to a defendant over 21 years of age." (Internal quotation marks omitted.) *Id.* ¶¶ 46, 47.

¶ 45    Most recently, in *Hilliard*, our supreme court considered a defendant's claim that "application of the proportionate penalties clause had never been limited to only the harshest penalties." *Hilliard*, 2023 IL 128186, ¶ 29. The State conceded that an adult defendant can bring an as-applied proportionate penalties challenge to a sentence other than life imprisonment. *Id.* Our supreme court agreed, stating that the "Illinois Constitution does not limit a proportionate penalties challenge to just juveniles or individuals with life sentences" and "a defendant may challenge a sentence of any length." *Id.* The *Hilliard* defendant was 18 at the time of his offense and challenged a mandatory 25-year firearm enhancement. *Id.* ¶ 1. Our supreme court stated that the "distinction between a juvenile and adult remains significant" (*id.* ¶ 39), and the defendant's status as an adult

distinguished "this case from the appellate court cases that [the defendant] relies on finding mandatory firearm enhancements unconstitutional as applied under the proportionate penalties clause," where the defendants in those cases were minors (*id.* ¶ 35).

¶ 46    The *Hilliard* court also considered whether the defendant's sentence shocked the moral sense of the community in light of his circumstances. *Id.* ¶ 40. The court accepted the allegations of the defendant's postconviction petition as true: he "had a troubling social history, where he did not have a relationship with his father and had not been enrolled in school since the fifth grade," "his brain was not yet fully developed because he was 18 years old," and "he had rehabilitative potential as demonstrated by the absence of a criminal history, lack of gang involvement, and a supportive family." *Id.* The court then considered the "defendant's allegations *** in conjunction with the circumstances of the case, that defendant chose to fire multiple shots at [the victim] at close range with no demonstrated provocation in an attempt to kill him." *Id.* In that light, "imposition of the mandatory 25-year firearm enhancement, which brought his total sentence to 40 years, is not even arguably cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *Id.* (Internal quotation marks omitted.) Thus, our supreme court affirmed the summary dismissal of the petition. *Id.*

¶ 47    Here, Savage was 22 at the time of his offenses, by itself fatal to his *Miller*-based proportionate penalties claim, as we held in *Buford* and our supreme court articulated in *Clark*. However, postconviction counsel advocated for the extension of the sentencing protections afforded to juveniles and young adult offenders to Savage, in light of Savage's particular circumstances, which formed a basis of Savage's proportionate penalties claim and the premise for this court's remand. Although postconviction counsel did not succeed in that argument, the record shows that argument was "the best option[] available," (*Williams*, 2025 IL 129718, ¶ 49),

compared to an explicit argument that Savage's sentence was cruel, degrading, or so wholly disproportioned to the offense as to shock the moral sense of the community.

¶ 48   When we conduct the same analysis as the *Hilliard* court—whether Savage's sentence shocks the moral sense of the community in light of his circumstances—we reach a similar conclusion that it does not.

¶ 49   We accept as true all the mitigating evidence presented to the sentencing court (*Hilliard*, 2023 IL 128186, ¶ 40), including Savage's age, family history, and drug addiction. As the sentencing court remarked, Savage was not "beyond rehabilitation" and had "made apparently a good adjustment to living in an institution." We accept, as we must at the second stage of postconviction proceedings (*id.* ¶ 19), the petition's allegations that Savage had been a drug addict since 9 years old, was "under the sway of adult gangbangers," and "was 22 yrs. old with a mind soaked in drugs since childhood" at the time of his offenses, so that he was "more susceptible to peer pressure" and "more volatile in emotionally charged settings."

¶ 50   We note that the *Hilliard* court "considered [the claimed mitigation] in conjunction with the circumstances of the case," and noted that the defendant therein "chose to fire multiple shots at [the victim] at close range with no demonstrated provocation in an attempt to kill him." *Id.* ¶ 40. Here, the circumstances are that Savage invaded a home with a firearm in hand to rob the occupants he believed to be drug dealers. Finding a card game in progress, he proceeded with his robbery, firing a shot into the ceiling and holding his firearm to Keyes's head. When Reed flipped the table, Savage shot Keyes fatally, in front of Keyes's mother. Instead of grasping the enormity of what he had done, he continued with his robbery, demanded "dope" from Reed, and shot Reed twice in the stomach. We conclude, to echo the *Hilliard* court, that "[w]hen defendant's allegations are considered in conjunction with the circumstances of the case," his aggregate 85-year prison

sentence "is not even arguably 'cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community.' " *Id.*

¶ 51 We must conclude that postconviction counsel could neither have added anything to Savage's *pro se* petition, nor added any argument in response to the State's motion to dismiss, to make the proportionate penalties claim at issue viable. Counsel's duties under Rule 651(c) "do not include bolstering every claim presented in a petitioner's *pro se* postconviction petition, regardless of its legal merit, or presenting each and every witness or shred of evidence the petitioner believes could potentially support his position." *People v. Custer*, 2019 IL 123339, ¶ 38. Under the circumstances, counsel's arguments were "the best options available," and "counsel cannot be said to have rendered an unreasonable level of assistance even if the arguments lacked legal merit, were not particularly compelling, and were ultimately unsuccessful." *Williams*, 2025 IL 129718, ¶ 49. We find Savage has failed to rebut the presumption created by postconviction counsel's Rule 651(c) certificate that counsel provided reasonable assistance, and counsel did, in fact, provide a reasonable level of assistance.

¶ 52                                III. CONCLUSION

¶ 53 Accordingly, the judgment of the circuit court is affirmed.

¶ 54 Affirmed.