2026 IL App (1st) 240130-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

FIRST DIVISION
April 27, 2026

No. 1-24-0130

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 90 CR 19682 |
| | ) | |
| JEFFREY BRYANT, | ) | The Honorable |
| | ) | James B. Novy, |
| Petitioner-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Howse and Cobbs concurred in the judgment.

**ORDER**

*Held:*  Postconviction petitioner received reasonable assistance from appointed counsel despite counsel not amending his *pro se* petition to assert a claim for proportionate penalties clause violation. Counsel had no duty to withdraw despite weakness of petitioner's claim.

¶ 1      Petitioner Jeffrey Bryant was convicted in a jury trial of first degree murder, aggravated criminal sexual assault, and residential burglary arising out of events that occurred on March 11, 1989, when he was 17 years old. Petitioner was sentenced to 80 years in prison to be served at 50%. In 2018, the trial court allowed him to file a successive postconviction petition raising a claim that his sentence amounted to a *de facto* life sentence that had been imposed without

consideration of his youth and its attendant characteristics in violation of his constitutional rights. The petition was advanced to second-stage proceedings, and counsel was appointed for petitioner. Following the trial court's second-stage determination that the petition failed to make a substantial showing of a deprivation of his constitutional rights, petitioner appeals on grounds that he did not receive reasonable assistance from his appointed counsel due to counsel's failure either to support his claim with available evidence or to withdraw if counsel determined that his claims lacked merit. We reject petitioner's argument that he received unreasonable assistance and therefore affirm the second-stage dismissal of his postconviction petition.[1]

¶ 2                                    I. BACKGROUND

¶ 3                                        A. Trial

¶ 4        The evidence at petitioner's trial showed in summary that, on March 14, 1989, the body of 70-year-old Rozalia Zieba was found by her daughter in a hallway of her home, naked from the waist down. A message had been scrawled on a wall of the living room essentially warning the decedent that her house would be burned down if she did not leave money on the television set. Gang graffiti was also found on the garage door matching the known nicknames of petitioner and codefendant David Hendrix. Petitioner was questioned in connection with the event and ultimately acknowledged to a detective that several weeks earlier, he and Hendrix had broken into the decedent's house and written the message on the living room wall. They broke in again on two subsequent occasions to check if money had been left on the television pursuant to their warning. The second time they did so, the decedent came home, found them inside, and threatened to call the police. Petitioner acknowledged in a court-reported statement that he then pushed the decedent

---

[1] The instant appeal was reassigned to Presiding Justice Fitzgerald Smith on April 1, 2026, due to illness of the authoring justice to which it was originally assigned. Every attempt has been made as of that date to issue this decision in a timely manner.

to the floor, grabbed a baseball bat, and hit her once or twice with it. He then gave the bat to Hendrix, who hit the decedent several more times in the head and back. Hendrix then pulled off the decedent's clothes and searched for items to steal before the two men ultimately fled. An autopsy confirmed that the decedent had died of cranial cerebral injuries due to blunt force trauma and that the decedent had also been sexually assaulted with a foreign object. The jury found petitioner guilty on charges of first degree murder, aggravated criminal sexual assault, and residential burglary.

¶ 5                                                  B. Sentencing

¶ 6        Petitioner's sentencing hearing occurred on September 26, 1990. Petitioner's juvenile probation officer was called as a witness at that hearing. Prior to his testimony, the prosecutor stated that the officer had brought with him petitioner's juvenile court records, which were under seal. Petitioner's defense counsel objected to the trial court reviewing those records because they had not been tendered to the defense prior to the hearing, and the trial court did not review the records prior to sentencing petitioner. The officer's testimony established that petitioner had three juvenile adjudications resulting in probation beginning when he was ten years old: burglary in 1981, robbery in 1985, and criminal sexual abuse in 1987. The majority of his referrals to juvenile court were associated with his inhaling of glue and paint. His probation officer agreed that he was a "constant glue sniffer" and that by 1985 he had developed a "mental condition" related to it. He was offered treatment services for it associated with his 1985 adjudication, but he failed to attend these. He was also referred to the Department of Children and Family Services but was not removed from his home for placement into a more structured environment despite his probation officer's recommendations that this occur. The police officer who investigated the incident that resulted in the 1987 adjudication for criminal sexual abuse testified that his investigation showed

that petitioner had gotten into bed with a four-year-old relative, pulled her pants down, and fondled her genital area.

¶ 7        In aggravation, the State argued for a sentence of natural life in prison. The prosecutor argued that petitioner had committed particularly brutal, vicious, and cruel murder of the decedent inside her home and had raped her with a foreign object in the course of doing so. He also argued that petitioner's juvenile criminal history showed that he was someone who preyed upon vulnerable people and that his failure to avail himself of the drug treatment services offered to him demonstrated that he was not someone who could be free in society.

¶ 8        In mitigation, petitioner's defense counsel argued that Hendrix had been the more culpable offender and that petitioner had merely followed him out of fear. Defense counsel urged the court to consider the brain damage petitioner had suffered from years of sniffing glue and the lack of meaningful assistance that he received from the juvenile court system to ensure this problem was addressed, despite his probation officer's recommendations. Petitioner declined to make any statement in allocution.

¶ 9        The trial court additionally reviewed the presentence investigation report. It indicated that petitioner quit school at age 16 after completing only the sixth grade. He described his family as close and stated he had a lot of contact with them. He stated that he had been using drugs since he was nine years old, including marijuana and cocaine, and inhaling liquid cleaner.

¶ 10       In issuing its sentencing determination, the trial court began by reviewing the facts of the case as shown by the evidence at trial. It characterized petitioner's conduct as having "terrorized" the decedent, "robbed her of her dignity," and "committed despicable acts" beneath what even an animal would deserve. The court cited petitioner's "substantial" criminal history as a juvenile and stated that it must take this into consideration. It also rejected defense counsel's contentions that

petitioner had been compelled to commit these acts by Hendrix or that it was the State's fault for not doing more to stop petitioner's use of inhalants. The court stated to petitioner, "[Y]ou are a young person. And I am going to indicate to you that the only reason that we are not considering life imprisonment is because of your age. Not because of the crime." It stated that "but for the fact that you were of the age you were when this crime was committed," even the death penalty could be a consideration. However, the court sentenced him to 80 years in the Illinois Department of Corrections on the first degree murder conviction, 30 years on the conviction for aggravated criminal sexual assault, and 15 years on the conviction for residential burglary, to run concurrently.

¶ 11    Under the law in effect at that time, petitioner was statutorily eligible for day-for-day good conduct credit whereby he was eligible for release after serving 40 years, which was 50% of his sentence. See Ill. Rev. Stat. 1989, ch. 38, ¶¶ 1003-3-3(c), 1003-6-3(a)(2).

¶ 12                                C. Direct Appeal

¶ 13    Petitioner filed a direct appeal. The only issue raised involved the admission of evidence concerning petitioner's gang nickname at trial. No issue was raised as to sentencing. This court affirmed petitioner's conviction. *People v. Bryant*, 251 Ill. App. 3d 1105 (1993) (table) (unpublished order under Illinois Supreme Court Rule 23).

¶ 14                         D. Initial Postconviction Petition

¶ 15    On December 28, 2010, petitioner filed an initial postconviction petition. His sole claim was that his extended-term sentence was unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The trial court summarily dismissed his initial postconviction petition on the basis that *Apprendi* had been held nonretroactive. Petitioner's appeal of this ruling was dismissed upon his own motion.

¶ 16                       E. Successive Postconviction Petition

¶ 17      On May 14, 2018, petitioner filed the successive postconviction petition that forms the basis of this appeal. In it, petitioner raised the claim that his 80-year sentence constituted a *de facto* life sentence that had been imposed for an offense committed at age 17 without consideration of the juvenile-sentencing principles espoused in *Miller v. Alabama*, 567 U.S. 460 (2012), and the line of cases that followed it. Petitioner's *pro se* petition consisted of nine handwritten pages, focused almost entirely on a discussion of the legal principles set forth in the various cases. Apart from reciting the fact that he was 17 years old at the time of the offense, it included no other facts about petitioner's background or his specific case or sentence. However, it did contain a statement that the sentence imposed was "unconstitutional as-applied under [the] eighth amendment to the United States Constitution, and under [the] Illinois proportionate penalties clause (Ill. Const. 1970, art. I § 11) because [the] crime was committed when petitioner was a juvenile." Petitioner requested to be resentenced pursuant to the 2016 statute concerning the sentencing of individuals under the age of 18 at the time of offense. See Pub. Acts 99-69 and 99-258 (eff. Jan. 1, 2016) (enacting 730 ILCS 5/5-4.5-105). He also attached his own sworn affidavit certifying that all facts stated in his petition were true and correct.

¶ 18      On May 24, 2018, the trial court ruled that it was docketing the successive postconviction petition on the grounds that it raised a claim under *Miller* for an offense committed when petitioner was 17 years old. The matter was continued for the appointment of postconviction counsel.

¶ 19      F. Representation by Postconviction Counsel

¶ 20      On June 15, 2018, the trial court appointed an assistant public defender to represent petitioner with respect to his docketed postconviction petition. The matter then underwent a long period of successive continuances while counsel and the trial court awaited issuance by the Illinois Supreme Court of various cases bearing on whether petitioner's sentence of 80 years to be served at 50%

qualified as an unconstitutional life sentence. To summarize, through April 2019, they were awaiting issuance of the decision in *People v. Buffer*, 2019 IL 122327. There, our supreme court ultimately held that a prison sentence of 40 years or less imposed on a juvenile offender offers a meaningful opportunity to obtain release based upon demonstrated maturity and rehabilitation and thus does not constitute a *de facto* life sentence in violation of the eighth amendment. *Id.* ¶ 41. After *Buffer*, they were awaiting a decision from our supreme court on how the availability of day-for-day good-conduct sentencing credit that could reduce the length of a juvenile offender's sentence to 40 years or less affects the rule set forth in *Buffer*. That decision came in July 2021, when our supreme court issued *People v. Dorsey*, 2021 IL 123010. There, the supreme court held that where a juvenile offender's eligibility for good-conduct credit could lessen a sentence to not more than 40 years, it is not an unconstitutional life sentence. *Id.* ¶ 50. It also addressed a claim under the proportionate penalties clause of the Illinois constitution (Ill. Const. 1970, art. I § 11) and held that the announcement in *Miller* of a new substantive rule under the eighth amendment did not provide "cause" for a juvenile offender's failure in earlier proceedings to raise the argument long available under the proportionate penalties clause that factors relevant youth were not taken into account in sentencing. *Id.* ¶ 74.

¶ 21        At the next court appearance in this case following the issuance of *Dorsey*, appointed counsel reported to the trial court that she and petitioner had exchanged several letters to determine if any additional issues remained that petitioner could pursue in light of the holding in *Dorsey*. Counsel made similar comments at four court appearances over the ensuing year, including at one point suggesting that she was investigating the viability of a claim under the proportionate penalties clause. In April 2023, the matter was reassigned within the public defender's office after the previously responsible attorney left the postconviction division.

¶ 22        Ultimately no amendment was made to petitioner's *pro se* petition. On August 21, 2023, petitioner's counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). By that certificate, counsel certified that he had consulted with petitioner by letter to ascertain his claims of a deprivation of his constitutional rights; that he had examined the record of proceedings at petitioner's trial and sentencing; and that, because petitioner's *pro se* petition for postconviction relief adequately stated petitioner's contentions as to a deprivation of his constitutional rights, counsel was making no amendments to it.

¶ 23        On September 13, 2023, the State filed a motion to dismiss the petition. It argued that petitioner could not show the requisite cause and prejudice to obtain relief in a successive postconviction petition. It argued that his sentencing claims were barred by principles of *res judicata* and forfeiture. And it argued that his claims of constitutional violation were meritless because his sentence was discretionary, it was not a life sentence, and it had been imposed with due consideration of the requirements of *Miller*.

¶ 24        Petitioner's counsel did not file a written response to the motion to dismiss. Instead, counsel made brief oral arguments when the motion came before the court for hearing on November 14, 2023. Counsel pointed out that while the State's arguments for dismissal were based upon untimeliness, *Miller* was decided in 2012 and had been made retroactive on collateral review in 2016 in the case of *Montgomery v. Louisiana*, 577 U.S. 190 (2016). Pointing out that the instant petition was filed in 2018, counsel concluded, "I don't think there is any way that the court could dismiss this based on timeliness of the petition. It is based on new case law. Judge, with that, I stand on the *pro se* petition."

¶ 25        In ruling, the trial court first stated that the case was a second-stage proceeding in which it was charged with determining whether the petition made a substantial showing of a constitutional

violation warranting advancement to a third-stage evidentiary hearing. It found that the petition failed to make such a showing. The trial court stated that petitioner had neither given a reason nor produced evidence for filing a late sentencing claim and that his failure to raise sentencing claims on direct appeal or in his initial postconviction petition resulted in waiver of his current sentencing claims. The trial court also stated that petitioner's claims based upon the principles of *Miller* were not well-founded because he did not receive a life sentence. It also added that his sentencing complied with the requirements of *Miller*, in that the sentencing court had fully considered his past through witnesses, the presentencing investigation report, and the attorneys' arguments. Finally, the trial court stated that petitioner's claim of a violation of his rights under the proportionate penalties clause was "not applicable." This appeal followed.

¶ 26                                      II. ANALYSIS

¶ 27        On appeal, petitioner does not challenge the merits of the trial court's dismissal of his successive postconviction petition. Instead, petitioner argues that his appointed counsel provided unreasonable assistance either by failing to support his claim under the proportionate penalties clause of the Illinois constitution with available evidence or by failing to move to withdraw upon determining that petitioner's claims lacked merit. As relief, petitioner requests that we reverse the trial court's dismissal of his petition, remand the matter for further second-stage proceedings, and order the appointment of new counsel to represent petitioner on remand.

¶ 28        It is well settled that no constitutional right to assistance of counsel exists in postconviction proceedings. *People v. Cotto*, 2016 IL 119006, ¶ 29. However, when counsel is appointed pursuant to statute to represent a postconviction petitioner in such proceedings, our supreme court has determined that a petitioner is entitled to a "reasonable" level of assistance. *People v. Agee*, 2023 IL 128413, ¶ 41. This is a significantly lower standard than the right to effective assistance

constitutionally afforded at trial prior to conviction. *People v. Custer*, 2019 IL 123339, ¶¶ 30-31.

¶ 29     To ensure that postconviction petitioners receive a reasonable level of assistance, certain specific duties are imposed by Rule 651(c) on attorneys in postconviction cases. *People v. Addison*, 2023 IL 127119, ¶ 20. That rule requires an attorney's certificate or other showing in the record that counsel has (1) consulted with the petitioner by phone, mail, electronic means, or in person to ascertain his or her contentions of deprivation of constitutional rights, (2) examined the record of the trial proceedings, and (3) made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of the petitioner's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). The rule's purpose is to ensure that a petitioner's claims are shaped into proper legal form and presented to the court, and counsel must attempt to overcome any procedural bars that would result in the claim's dismissal if not rebutted. *People v. Perkins*, 229 Ill. 2d 34, 43-44 (2007). Counsel is not required to advance frivolous or spurious claims on a petitioner's behalf. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006). " '[P]ost-conviction counsel is only required to investigate and properly present the *petitioner's* claims' " but is not obligated to raise new claims or issues not included in the *pro se* petition. (Emphasis in original.) *Id.* at 475-76 (quoting *People v. Davis*, 156 Ill. 2d 149, 164 (1993)).

¶ 30     Where, as here, an attorney files a certificate under Rule 651(c), a rebuttable presumption arises that postconviction counsel has provided reasonable assistance. *Addison*, 2023 IL 127119, ¶ 21. A postconviction petitioner bears the burden of overcoming that presumption by showing that counsel failed to substantially comply with the requirements of the rule. *Id.* Whether postconviction counsel has provided reasonable assistance is a matter that we review *de novo*. *People v. Williams*, 2025 IL 129718, ¶ 41.

¶ 31     Petitioner's first argument is that he was not provided with reasonable assistance due to his

attorney's failure to present a claim supported by available evidence (or explaining the absence of such evidence) as to "why his 80-year sentence shocked the moral sense of the community" and therefore violated the proportionate penalties clause of the Illinois constitution. See *People v. Miller*, 202 Ill. 2d 328, 338 (2002) (proportionate penalties clause violation may be shown where a defendant's sentence "is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community"). Petitioner asserts on appeal that "a plethora of potential mitigating evidence existed as memorialized in [his] juvenile probation officer's records" that were brought by the officer to his sentencing hearing but not reviewed by the judge prior to sentencing. He asserts that the officer's subsequent testimony "hinted at a wealth of potential mitigating evidence" to which the judge gave no weight because the records were not reviewed. He similarly faults his counsel for failing "at the simplest task of including an affidavit from [petitioner] as to his particular circumstances as a juvenile." He urges us to conclude from his attorney's failure to complete these "basic tasks" that he has overcome the presumption of reasonable assistance that arises from his attorney's filing of a certificate under Rule 651(c). He accordingly contends that we cannot conclude that his claims were ever "rounded into their final form" and that we must remand his case without consideration of their merits due to counsel's noncompliance with Rule 651(c). See *Addison*, 2023 IL 127119, ¶ 41; *People v. Turner*, 187 Ill. 2d 406, 416-17 (1999).

¶ 32    We reject petitioner's first argument as to why he did not receive reasonable assistance. In doing so, we reiterate that counsel's duty was only " 'to investigate and properly present the *petitioner's* claims,' " and counsel had no obligation to raise new claims or issues that petitioner did not include in his *pro se* petition. (Emphasis in original.) *Pendleton*, 223 Ill. 2d at 475-76 (quoting *Davis*, 156 Ill. 2d at 164). In our view, the claim under the Illinois proportionate penalties clause that petitioner now faults his counsel for not advancing or supporting with evidence is not

one that petitioner raised in his *pro se* petition. While we recognize that his *pro se* petition made a brief reference to his sentence being unconstitutional as-applied under the proportionate penalties clause, that claim entirely overlapped his claim under the eighth amendment that his 80-year sentence imposed for an offense committed when he was 17 years old constituted a *de facto* life sentence that was unconstitutional pursuant to *Miller* and its progeny. At the time in May 2018 when petitioner filed his *pro se* petition and was appointed counsel, there was arguable merit to such a claim of a constitutional deprivation. However, the later holdings of *Buffer* and *Dorsey* effectively precluded him from establishing a constitutional deprivation by July 2021, by requiring that a sentence be more than 40 years to constitute a *de facto* life sentence (*Buffer*, 2019 IL 122327, ¶ 41) and including within this calculation whether day-for-day good-conduct credit was available to allow a juvenile offender to serve not more than 40 years (*Dorsey*, 2021 IL 123010, ¶ 50). We add that petitioner received a discretionary sentence, and thus his claim of any constitutional deprivation was further undermined by cases after May 2018 holding that the eighth amendment is not violated provided a juvenile offender is sentenced according to a discretionary sentencing scheme. See *Jones v. Mississippi*, 593 U.S. 98, 105 (2021); *People v. Wilson*, 2023 IL 127666, ¶¶ 38-44, *overruling People v. Holman*, 2017 IL 120655.

¶ 33   Petitioner's *pro se* petition did not mention any facts other than his status as a juvenile offender as being a reason why his sentence was unconstitutional. Nothing that petitioner stated in it can be fairly interpreted as asserting a claim that his sentence shocked the moral sense of the community based upon the particular facts of his case. We do not believe that postconviction counsel had any obligation following the issuance of *Buffer* and *Dorsey* to reformulate petitioner's claim with additional facts not raised in his *pro se* petition in an attempt to keep it viable as an alleged violation of the proportionate penalties clause despite it no longer being viable as a claim

under the eighth amendment. Petitioner's brief reference in his *pro se* petition to a proportionate penalties clause violation, which completely overlapped his *Miller*-based argument under the eighth amendment, did not impose such a duty on counsel.

¶ 34 Petitioner's second argument is that his attorney failed to provide reasonable assistance by not moving to withdraw assuming he had determined that petitioner's claims were frivolous or without merit. Petitioner cites, *inter alia*, our supreme court's statement that "postconviction counsel is ethically obligated to withdraw if he or she believes there are no meritorious issues." See *People v. Urzua*, 2023 IL 127789, ¶ 37 (citing *People v. Greer*, 212 Ill. 2d 192, 209 (2004)); accord *People v. Kuehner*, 2015 IL 117695, ¶ 21. This principle generally applies in situations where, for example, counsel is appointed to advance a postconviction petition that was not subjected to a prior trial court determination that the *pro se* petition stated an arguably nonfrivolous and meritorious claim. See *Greer*, 212 Ill. 2d at 207-09. It has also been cited in cases where counsel, without moving to withdraw, has made statements to the court adverse to the petitioner's interests concerning the petition. See, *e.g.*, *People v. Shortridge*, 2012 IL App (4th) 100663, ¶¶ 13-14 (without moving to withdraw, counsel characterized claims in *pro se* petition to court as "nonmeritorious" and confessed to State's motion to dismiss); *People v. Elken*, 2014 IL App (3d) 120580, ¶¶ 32, 36 (similar).

¶ 35 More recently, however, our supreme court has clarified that postconviction counsel is not required to withdraw merely because the petitioner whom counsel represents has a weak legal claim that is nevertheless presented by counsel in a proper legal form. *People v. Huff*, 2024 IL 128492, ¶ 30. The court distinguished an attorney's simply stating that he or she is resting on the allegations of a *pro se* petition from situations such as occurred in *Shortridge* and *Elken* where counsel affirmatively takes the position before the court that the petitioner's contentions are

without merit. *Id.* ¶ 31.

¶ 36        In this case, we reject petitioner's claim that his appointed counsel had a duty to seek withdrawal. As we stated above, the claim that petitioner raised in his *pro se* petition was one that had arguable merit at the time of its filing and the initial appointment of its counsel, but its merit was undermined by the subsequent holdings in *Buffer* and *Dorsey*. Following these decisions, petitioner had a weak legal claim that nevertheless needed to be advanced to resolution. We find nothing unreasonable about counsel's continuing to represent petitioner through the time of ruling or in counsel's making of a brief argument before stating that he was otherwise standing on the *pro se* petition. Nothing in the record indicates that counsel made any statement adverse to petitioner's interests with respect to the petition or that counsel knew or believed petitioner's claim was too frivolous or meritless to advance consistent with his ethical duties. We hold that petitioner received reasonable assistance and that his counsel had no duty to move to withdraw under the facts of this case.

¶ 37                                III. CONCLUSION

¶ 38        For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 39        Affirmed.